608 A.2d 1030

COMMONWEALTH of Pennsylvania, Appellee,

v.

Tina Marie DeWITT, Appellant.

Supreme Court of Pennsylvania.

Submitted April 10, 1992.

Decided May 20, 1992.

Michael J. Cammarano, Reading, for appellant.

Jacqueline L. Russell, Asst. Dist. Atty., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

This is an appeal from the Superior Court's Order reversing a Schuylkill County Common Pleas Court's Order, entered on November 16, 1989, suppressing the evidence of drugs and drug paraphernalia seized during an automobile search.

We begin by noting that where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. Pa.R.Crim.P. 323(h). *See Commonwealth v. Iannaccio*, 505 Pa. 414, 480 A.2d 966 (1984), *cert. denied*, 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d

78 (1985). In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record. *Commonwealth v. Monarch*, 510 Pa. 138, 147, 507 A.2d 74, 78 (1986). If so, we are bound by those findings. *Commonwealth v. James*, 506 Pa. 526, 533, 486 A.2d 376, 379 (1985). Where, as here, it is the Commonwealth who is appealing the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. *Commonwealth v. James*, 506 Pa. at 532–33, 486 A.2d at 379; *Commonwealth v. Hamlin*, 503 Pa. 210, 216, 469 A.2d 137, 139 (1983).[1]

The facts, viewed in light of the foregoing standard are as follows: On May 13, 1989, at approximately 11:50 p.m., while on routine patrol in South Manheim Township, State Troopers Reichert and Hartzel observed an automobile parked partially on the berm of the road and partially in the parking lot of St. Paul's Church. The vehicle was faced in the opposite direction of travel. The vehicle's interior lights were illuminated but the exterior lights were not. Trooper Reichert testified that he was concerned because he thought that the vehicle might be disabled, and also because he had received notice from St. Paul's Church to check for suspicious vehicles. Trooper Reichert testified that in order to investigate, he pulled alongside the vehicle, whereupon the interior lights were extinguished and the four occupants made "furtive movements and suspicious movements as if they were trying to hide something." (N.T. 10/6/89, p. 7). The vehicle then began to pull away from the scene. At that point, Trooper Reichert became suspicious of criminal activity and stopped the vehicle. As the officers approached the vehicle on foot, they saw, in plain view, containers of beer, a blue checkbook covered with a white powdery substance appearing to be cocaine, and a marijuana cigarette. Based upon a preliminary determination that

1. The only witness who testified at the suppression hearing was Trooper Reichert of the Pennsylvania State Police on behalf of the Commonwealth.

illegal substances were present in the vehicle, the troopers asked the occupants including appellant, to exit the vehicle. The troopers then did a frisk of the individuals for their, the troopers', own safety and also searched the interior of the vehicle.  As a result of the search, the police found cocaine, marijuana, and drug paraphernalia.

Appellant was charged with violations of the Controlled Substance, Drug, Device and Cosmetic Act.  Following a hearing on appellant's omnibus pre-trial motion, the court suppressed the evidence of illegal drugs and paraphernalia. The suppression court found that the police officers were not authorized to make the stop of the vehicle either as an investigative or traffic stop because they did not have probable cause to believe a traffic violation had occurred or a vehicle or licensing provision had been violated, and there were insufficient facts to reasonably warrant suspicion of criminal conduct.  This determination was based on the court's findings that the only information available to the troopers was their observation of a vehicle parked in a church parking lot with its dome light illuminated and its outside lights extinguished, and as the troopers approached, the vehicle attempted to leave the parking lot.  On appeal, the Superior Court reversed, 408 Pa.Super. 645, 588 A.2d 559, (Table) finding that the lower court's summary of the facts was not supported by the record.  This appeal followed.

Appellant asserts that the suppression court was correct in suppressing the evidence based upon its conclusion that the police did not have sufficient cause to legally stop the vehicle.  The Commonwealth argues that the police were authorized to make the stop as either a traffic stop or an investigative stop.  We agree with the suppression court that "[i]n the instant case, there is no question that the state police did not have reason to stop the vehicle in question either as a traffic stop or an investigative stop...."  The suppression court further stated that:

    [f]or a traffic stop to be valid, the police officer must have probable cause to believe a traffic violation has

occurred or a vehicle or licensing provision is being violated. *Pennsylvania v. Mimms*, 434 U.S. 106 [98 S.Ct. 330, 54 L.Ed.2d 331] (1977). For an investigative stop to be valid, there must be sufficient facts that when taken together, reasonably warrant suspicion of criminal conduct on the part of the occupants of the vehicle. *U.S. v. Brignoni-Ponce*, [422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)].

Suppression Court Opinion at 3-4.

We find first that the stop in the instant case was not a valid "traffic stop." It is clear that a police officer may stop a motor vehicle if he or she reasonably believes that a provision of the Motor Vehicle Code is being or has been violated. 75 Pa.C.S.A. § 6308; *Commonwealth v. Elliott*, 376 Pa.Super. 536, 546 A.2d 654 (1988). In an attempt to defend the propriety of the stop, Trooper Reichert stated several reasons which he believed justified the stop. He first testified that the vehicle had the appearance of being a disabled vehicle. This thought, however, should have been quickly dispelled when the car began to pull away. He also testified that the vehicle was parked facing east, the opposite direction of travel, and that in order to get there the car would have had to have travelled on the wrong side of the road, an obvious violation of the vehicle code. The car, however, could have arrived at its position via the parking lot, and since Trooper Reichert testified that he did not observe the vehicle being operated or violating any traffic law, his conclusion that the car must have been driven on the wrong side of the road is speculative. Trooper Reichert further testified that it would be a violation of the vehicle code to park on the roadway if the car had no purpose to be parked there and was not a disabled vehicle. There is no evidence in the record to indicate that Trooper Reichert had any reason to believe that the vehicle was parked on the road without a purpose, hence it was speculation that the car was parked without a legitimate purpose. Additionally, although Trooper Reichert claims that the vehicle was parked, he testified that he believed the vehic-

le's engine was on. Therefore, he could not know whether the vehicle was momentarily stopped or parked. Finally, Trooper Reichert testified that the vehicle was trespassing on private property. The criminal trespass statute, 18 Pa.C.S.A. § 3503 provides in relevant part:

(a) Buildings and occupied structures.—

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

(i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; or

(ii) breaks into any building or occupied structure or separately secured or occupied portion thereof.

(b) Defiant trespasser.—

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:

(i) actual communication to the actor; or

(ii) posting in a manner prescribed by law or reasonably likely to come to the attention of intruders; or

(iii) fencing or other enclosure manifestly designed to exclude intruders.

(2) An offense under this subsection constitutes a misdemeanor of the third degree if the offender defies an order to leave personally communicated to him by the owner of the premises or other authorized person. Otherwise it is a *summary offense.* (emphasis added).

Appellant clearly was not in violation of subsection (a), since she did not enter or break into any structure or portion thereof; therefore, it is presumed that Trooper Reichert was referring to subsection (b), Defiant Trespasser. However, there was no evidence that appellant knew she was not privileged to be in the church parking lot and no testimony that "notice against trespass" was given to appellant; thus, there was no violation of the statute.

Although not mentioned by Trooper Reichert as a reason for the stop, the Commonwealth cited § 3354 of the Vehicle

Code to support its argument that the trooper had probable cause to stop the vehicle for violating the vehicle code. Section 3354 states, in relevant part:

§ 3354    Additional Parking Regulations

(a) Two-way highways.—Except as otherwise provided in this section, every vehicle standing or parked upon a two-way highway shall be positioned parallel to and with the right-hand wheels within 12 inches of the right-hand curb or, in the absence of a curb, as close as practicable to the right edge of the right-hand shoulder.

75 Pa.C.S.A. § 3354.

The acts described by Trooper Reichert do not constitute a violation of § 3354, based upon evidence that the vehicle in the instant case was parked with its right-hand wheels very close to the berm or shoulder, and nothing in this section specifies the direction in which the vehicle must face.

It appears that the theories advanced by Trooper Reichert and the Commonwealth are after the fact justifications, rather than valid reasons for the stop. Hence, we find that at the time of the stop, Trooper Reichert did not have probable cause to carry out a lawful traffic stop.

[6]    The record also reflects insufficient evidence to justify an "investigative stop," even though less than probable cause would suffice to render the stop lawful. In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court recognized that certain investigative seizures of an individual need not be supported by probable cause. In *Terry,* the Court held that a stop for investigatory purposes is justified if the police officer observes unusual conduct which leads him or her reasonably to conclude in light of his or her experience that criminal activity may be afoot. *Terry v. Ohio,* 392 U.S. at 30, 88 S.Ct. at 1884. The officer must be able to point to specific and articulable facts which give rise to a reasonable suspicion of criminal activity. *Id.* at 21–22, 88 S.Ct. at 1879–81. In *Commonwealth v. Lovette,* 498 Pa. 665, 450 A.2d 975 (1982), *cert. denied,* 459 U.S. 1178, 103 S.Ct. 830, 74 L.Ed.2d

1025 (1983), this Court stated that *Terry* and its progeny recognize "that some seizures admittedly covered by the Fourth Amendment constitute such limited intrusions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than probable cause, so long as the police have an articulable basis for suspecting criminal activity." *Commonwealth v. Lovette*, 498 Pa. at 673, 450 A.2d at 979 (1982), quoting *Michigan v. Summers*, 452 U.S. 692, 699, 101 S.Ct. 2587, 2592, 69 L.Ed.2d 340 (1981). Even with this lower standard, we are unable to conclude that the police officers, in this case, had sufficient information to reasonably suspect that criminal activity may have been afoot.

The Superior Court stated that:

[t]he vehicle's interior lights were on, and the exterior lights were extinguished. When the officers approached, the interior lights were also extinguished, and the car began to move. The troopers also observed a series of furtive movements, leading them to suspect that the passengers were attempting to hide something. The combination of furtive movements, time of night, previous notice from the property owner, potential parking violation, and attempted movement from the scene when the police arrived, sufficiently justified the legality of the stop.

Superior Court Opinion at 8.

We find this conclusion unsupported by the record. Although the police had previous notice from the property owner of criminal behavior in the church parking lot,[2] there was absolutely no evidence that the vehicle in question was engaged in the type of activity complained of. Additionally, this Court has held that flight, in and of itself, does not constitute probable cause to arrest. *Commonwealth v. Jeffries*, 454 Pa. 320, 323, 311 A.2d 914, 916 (1973). We

---

**2.** Trooper Reichert testified that "the police had received notice from St. Paul's Church to check for suspicious vehicles, i.e., kids, underage drinking, laying rubber, doing donuts in the parking lot and that nature." (N.T. 10/6/89, p. 5).

would be hard pressed to find that flight, in and of itself, constitutes reasonable suspicion of criminal conduct. Based upon the remaining facts, we find that there was insufficient evidence to make an investigatory stop.

We hold, therefore, that the police did not have either probable cause to believe a traffic violation had occurred, or reasonable suspicion of criminal conduct to justify the stop made in the instant case, and the suppression court's findings of fact are clearly supported by the record. Accordingly, the order of the Superior Court is reversed.

McDERMOTT, J., files a dissenting opinion.

McDERMOTT, Justice, dissenting.

Trooper Reichert was not sitting in an arm chair "speculating" he was in a police cruiser on midnight patrol when he observed the facts so cogently summarized by the Superior Court.

> [t]he vehicle's interior lights were on, and the exterior lights were extinguished. When the officers approached, the interior lights were also extinguished, and the car began to move. The troopers also observed a series of furtive movements, leading them to suspect that the passengers were attempting to hide something. The combination of furtive movements, time of night, previous notice from the property owner, potential parking violation, and attempted movement from the scene when the police arrived, sufficiently justified the legality of the stop.

Superior Court Opinion at 8.

These are facts which only ingenious gamesmanship can dismiss as insufficient for an investigative stop. The Majority, cool, speculative, safely distant, can always be wiser, more indulgent in their quiet lucubrations. Their adrenaline is controlled, their hearts ticking away on a soft afternoon. However, police officers who are patrolling the front lines of the battlefield of crime must contend with the realities of their environment, and must be free to read and

react to those signs which their experience tells them portends felonious activity. *See Commonwealth v. Cortez,* 507 Pa. 529, 491 A.2d 111 (1985).

I dissent.