J-A09013-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| MALIK NOEL, | : | |
| | : | |
| Appellee | : | No. 1087 EDA 2014 |

Appeal from the Order entered March 13, 2014,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0006259-2013

BEFORE:  BOWES, DONOHUE and STABILE, JJ.

DISSENTING MEMORANDUM BY DONOHUE, J.:          **FILED JUNE 17, 2015**

I fully agree with the learned Majority that the number of anonymous tips in this case provides no greater indicia of reliability than does a single anonymous tip.  *See* Maj. at 19; *see also Commonwealth v. Jackson*, 698 A.2d 571, 573 (Pa. 1997) ("Where … the underlying source of the police department's information is an anonymous telephone call, the courts have recognized that the tip should be treated with particular suspicion.").  I further agree that simply because Malik Noel ("Noel") matched some innocuous characteristics of the person seen with a gun as described in some of the tips, this does not give rise to a finding that the police had a reasonable suspicion to believe that Noel was armed and dangerous.  Maj. at 19.  Thus, this case turns on whether Noel's act of slipping his hand underneath the barber cape while getting a haircut as police approached

him, in a private business with no history of violent episodes albeit located in a high crime area, provided the police with a reasonable suspicion to conduct a *Terry* frisk of Noel.  In my view, it did not.

It is uncontested that the police subjected Noel to an investigative detention.  Prior to conducting an investigative detention, police must have "at least a reasonable suspicion that the person seized is then engaged in unlawful activity." *Commonwealth v. Reppert*, 814 A.2d 1196, 1203 (Pa. Super. 2002) (en banc) (citing *Commonwealth v. Polo*, 759 A.2d 372, 375 (Pa. 2000)).  We must examine the totality of the circumstances to determine whether the officer was able to "articulate specific observations, which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." *Id.* at 1204 (citation omitted).

> Although a police officer's knowledge and length of experience weigh heavily in determining whether reasonable suspicion existed, our [c]ourts remain mindful that the officer's judgment is necessarily colored by his or her primary involvement in the often competitive enterprise of ferreting out crime. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the [intrusion] warrant a man of reasonable caution in the belief that the action taken was appropriate. **This inquiry will not be satisfied by an officer's hunch or unparticularized suspicion**.

*Id.* (internal citations and quotation marks omitted) (emphasis in the original).

The question of whether reasonable suspicion existed at the time of the investigative detention is a fact-specific inquiry. Examining other case law addressing similar circumstances, I, like the trial court, would conclude that the police did not have reasonable suspicion to conduct the investigative detention in this case.

In ***Commonwealth v. DeWitt***, 608 A.2d 1030 (Pa. 1992), for example, the defendant was in a parked car with other occupants in a church parking lot where there had been reports of criminal activity. *Id.* at 1031. At approximately 11:50 p.m., police observed the vehicle and approached to investigate, at which time the occupants extinguished the interior lights of the car and "made furtive movements and suspicious movements as if they were trying to hide something." *Id.* at 1032. The defendant attempted to drive away from the scene and police stopped the vehicle, thereafter observing in plain view alcohol, cocaine and marijuana inside the car. *Id.* A subsequent frisk of the defendant and search of the vehicle yielded cocaine, marijuana and drug paraphernalia. *Id.* Our Supreme Court held that despite reports of criminal behavior at that location, furtive movements by the occupants of the vehicle as the police approached, flight, and the stop occurring at night, police did not have reasonable suspicion to conduct an investigative detention. *Id.* at 1034.

Furthermore, in ***Reppert***, the defendant was a backseat passenger in a friend's vehicle. ***Reppert***, 814 A.2d at 1199. The police chief observed that the car had expired inspection and registration stickers and began to follow, observing the defendant's head and shoulders moving, which caused the chief to believe that the defendant "was stuffing something into his pockets or between the seat cushions of the car." ***Id.*** Upon stopping the vehicle, the driver provided an explanation for the expired stickers and the chief did not issue a citation. ***Id.*** While the chief spoke with the driver, he observed that the defendant was "antsy and very, very nervous, with a look on his face." ***Id.*** The chief ordered the defendant out of the car and at that point, he saw "bulges" in the defendant's front pockets. ***Id.*** The defendant emptied his pockets as instructed by the chief, revealing $51 in cash, forty-one grams of marijuana with multiple small bags and a small scale. ***Id.*** This Court, sitting en banc, held that "[a] police officer's observation of a citizen's nervous demeanor and furtive movements, without more, establishes nothing more than a 'hunch,' employing speculation about the citizen's motive in the place of fact." ***Id.*** at 1026.

Finally, in ***Commonwealth v. Wiley***, 858 A.2d 1191 (Pa. Super. 2004), the case relied upon by Noel in support of his argument for affirmance, police received an anonymous tip describing a light-complected black male with a gun inside of a barbershop. ***Id.*** at 1193. The officer was familiar with both the neighborhood and the barbershop itself, and thus went

into the shop with his gun drawn for protection. *Id.* The officer had the defendant raise his hands, shook the defendant's waistband, and recovered from him a loaded gun. *Id.* On appeal by the defendant, this Court reversed his conviction, concluding that the investigative detention was based on nothing more than an uncorroborated anonymous tip, and the police therefore lacked reasonable suspicion. *Id.* at 1196.

Turning to the facts of the case at bar, the record reflects that there were three anonymous tips in this case: the first described an armed thirty-year-old black male with a medium complexion wearing a white thermal shirt and black coat, with bushy hair and driving a red and black Charger who went into a barber shop in the 3000 block of North 22nd Street; the second described an armed black male wearing a white jacket and blue jeans who went into a barber shop at the same location; the third described an armed black male wearing a white thermal shirt, black jacket, blue jeans and black shoes. N.T., 3/13/14, at 12-13. Police eventually located a barbershop in that area. *Id.* at 15. Although the neighborhood itself was a high crime area, Officer Schmid testified that he had never been to the barbershop itself and was unaware of any reports of criminal activity at the business. *Id.* at 10, 15, 44.

Upon entering the barbershop, Officer Schmid announced the presence of police and asked if anyone made a call regarding a person with a gun. *Id.* at 16. He observed Noel, a medium-complected black male who

appeared to the officer to be approximately thirty years old, getting a haircut. *Id.* at 17, 23. According to Officer Schmid, Noel was wearing a white thermal shirt. *Id.* at 17. Because Noel was wearing a barber's cape, Officer Schmid could only see the shirt around Noel's neck. *Id.* Officer Schmid did not testify to observing any additional similarities between Noel and the various descriptions of the armed man provided in the anonymous tips. He did not take notice of Noel's shoes or hairstyle; he did not notice a black or white jacket anywhere in the shop; and he only **subsequently** observed that Noel was wearing jeans and that a black and red Charger was parked outside of the shop. *Id.* at 25-26, 29.

Officer Schmid began to walk towards Noel on his right side and Officer Schmid's partner walked towards Noel on the left. *Id.* at 18-19. Both of Noel's arms were resting on the arms of the barber's chair. *Id.* at 18. As Officer Schmid approached, the barber stepped away, and the officer observed Noel's left hand begin to slide down from the armrest of the barber chair under the barber cape he was wearing for his haircut. *Id.* at 18. By the time Officer Schmid reached Noel, Noel's left hand was under the cape. *Id.* at 19. Officer Schmid testified that he asked Noel what he was doing with his hand and ordered him to show his hand, and without giving Noel time to respond, Officer Schmid "pinched the barber cape and tossed it off of [Noel's] left side," and as Noel leaned forward to stand, Officer Schmid observed a gun in Noel's waistband. *Id.* at 19-20.

Officer Schmid confiscated the gun and arrested Noel. *Id.* at 22. The biographical information taken at the time of Noel's arrest indicates, in relevant part, that Noel was wearing a beige/tan thermal shirt, tan boots and blue jeans and that Noel had a beard. *Id.* at 39-41.

Taking all of the information known to Officer Schmid at the time he subjected Noel to an investigative detention, the only characteristics that Noel shared with the person described in the anonymous tips was that he was a thirty-year-old, medium-complected black male wearing a light colored thermal shirt. The only additional fact that arguably supported a finding of reasonable suspicion in this case was that Noel slowly slid his hand under the barber's cape as police approached him. The record reflects, however, that Noel's back was to the police as they approached, and there was no testimony that Noel saw the police coming towards him or that he slid his hand under the barber's cape in reaction to their approach. Instead, I am of the same view as the trial court – that Noel's behavior of moving his hand under the barber's cape was common for a person getting a haircut. *See* Trial Court Opinion, 8/13/14, at 8.

Although the Majority is correct that in some cases, innocent actions can be included as factors giving rise to a finding of reasonable suspicion, I disagree that this particular action did so in this particular case. Examining the totality of the circumstances in the case at bar – unreliable anonymous tips describing an armed man in the area that only vaguely resembled Noel,

combined with Noel's action of sliding his arm under a barber's cape during a haircut in a private business with no history of criminal activity – I would conclude that Officer Schmid had no more than a hunch that Noel may have been armed. ***See Reppert***, 814 A.2d at 1203.

As stated above, existing precedent dictates that furtive movements, flight from police, at night, at a location where police had received reports of criminal activity is insufficient to give rise to a finding of reasonable suspicion, ***DeWitt***, 608 A.2d at 1034, as are suspicious/furtive movements combined with nervousness, ***Reppert***, 814 A.2d at 1199. I find that the facts available to police at the time of the intrusion in the case at bar are less compelling than were present in ***DeWitt*** and ***Reppert*** and that this case is indistinguishable from ***Wiley***. The Majority differentiates this case from ***Wiley*** based upon three factors: (1) "this case involves multiple tips"; (2) "[Officer Schmid] did not enter the barbershop with his weapon drawn"; and (3) "[Noel] moved his hand to where police could not see it when they asked if anyone had called to report a person with a gun." Maj. at 12. However, the first factor relied upon by the Majority flies in the face of its later conclusion, stated above, "that the number of anonymous tips received provides [no] greater *indicia* of reliability than a single tip." Maj. at 19. Furthermore, whether Officer Schmid had his gun drawn upon entering the barbershop has no bearing on whether he had a reasonable suspicion that Noel was armed. Finally, my review of the record does not find support for

the implication the Majority makes in its third differentiating factor – that Noel slipped his hand under the barber's cape immediately following and in response to the police asking if anyone called about seeing a man with a gun. The record does not reflect that Noel made any physical movements upon Officer Schmid's entry into the barbershop and announcement of the reason for police presence. Rather, he slipped his hand underneath the barber's cape during Officer Schmid's approach and, as stated above, the record provides no indication of whether Noel was aware the police were approaching him.

Our Supreme Court has held:

> If the police respond to an anonymous call that a particular person at a specified location is engaged in criminal activity, and upon arriving at the location see a person matching the description but nothing more, they have no certain knowledge except that the caller accurately described someone at a particular location.... [T]he fact that a suspect resembles the anonymous caller's description does not corroborate allegations of criminal conduct, for anyone can describe a person who is standing in a particular location at the time of the anonymous call. Something more is needed to corroborate the caller's allegations of criminal conduct.
>
> \* \* \*
>
> The fact that the subject of the call was alleged to be carrying a gun, of course, is merely another allegation, and it supplies no reliability where there was none before. And since there is no gun exception to the **Terry** requirement for reasonable suspicion of criminal activity, in the typical anonymous caller situation, the police will need an

> independent basis to establish the requisite reasonable suspicion.

*Jackson*, 698 A.2d at 574-75 (citation omitted). My review of the record reveals that the police did not sufficiently corroborate the anonymous tips to provide the police with an independent basis to establish a reasonable suspicion that Noel was armed. Therefore, I would find no error in the trial court's decision to suppress the evidence recovered from Noel and respectfully dissent from the Majority's contrary conclusion.