J-S21035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SEDRICK T. SMITH, | |
| Appellant | No. 2265 EDA 2015 |

Appeal from the Judgment of Sentence July 1, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0009342-2013

BEFORE:  BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                **FILED MARCH 04, 2016**

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Montgomery County, which, sitting as finder of fact in a non-jury trial, found Appellant guilty of one count of DUI and two counts of Driving Under a Suspended License-DUI related.  Appellant contends the suppression court erroneously determined that he was subjected to a lawful traffic stop.  We affirm.

The trial court aptly summarizes the factual history pertinent to the suppression issue before us.

> On November 9, 2013 at approximately 5:17 a.m., Lower Moreland Patrol Sergeant John Stevens observed a suspicious vehicle, occupied by Appellant, which was parked next to a gas pump in a gas station.  At the time Sgt. Stevens observed the vehicle, the gas station was closed for business and the property was not illuminated.  Sgt. Stevens made a U-turn in order to enter the gas station and investigate the suspicious vehicle.  Once Sgt. Stevens entered the gas station, Appellant drove his

*Former Justice specially assigned to the Superior Court.

vehicle to the opposite side of the gas pump. Sgt. Stevens then activated his emergency lights and initiated a traffic stop.

Sgt. Stevens approached Appellant and noticed that Appellant was exhibiting signs of intoxication. Sgt. Stevens asked Appellant to perform sobriety tests, which confirmed his belief that Appellant was Driving Under the Influence ("DUI"). After Appellant was arrested, Sgt. Stevens read him the O'Connell warnings.[fn] Appellant then refused to submit to a blood draw.

---

[fn] The phrase "O'Connell Warnings" means the officer must specifically inform a motorist that his driving privileges will be suspended for one year if he refuses chemical testing, and that the rights provided by the United States Supreme Court's decision in **Miranda v. Arizona**, 384 U.S. 436 (1966) do not apply to chemical testing. **See Commonwealth, Dept. of Transp., Bureau of Traffic Safety v. O'Connell**, 555 A.2d 873, 877-78 (Pa. 1989). . . .

---

On June 4, 2014, [the trial court] held a hearing to decide Appellant's Motion to Suppress. At the outset of the hearing, Appellant's counsel stated that the only issue being challenged was the legality of the stop. [The trial court] denied Appellant's motion the same day. . . . [Trial commenced on January 22, 2015, wherein the court] found Appellant guilty of [DUI and] Driving Under a Suspended License-DUI related.

Trial Court Opinion, filed Sept. 24, 2015, at 1-2.

On July 24, 2015, the trial court ordered Appellant to file and serve on the court a Pa.R.A.P. 1925(b) statement within twenty-one days. The docket does not reflect compliance with Pa.R.C.P. 236.[1] On August 11, 2015, Appellant filed a Rule 1925(b) statement but failed to serve a copy on

---

[1] We discuss this in further detail below.

the court. The trial court issued a Rule 1925(a) opinion objecting to counsel's failure to serve the Rule 1925(b) statement.

Instantly, we ascertain whether Appellant complied with Pa.R.A.P. 1925(b)(1), which states in relevant part: "(1) *Filing and service.*—Appellant shall file of record the Statement **and** concurrently shall serve the judge. Filing of record and service on the judge shall be in person or by mail...." Pa.R.A.P. 1925(b)(1) (emphasis added). We must also examine whether the Trial court strictly complied with Pa.R.C.P. 236 when it ordered a Rule 1925(b) statement. *See In re L.M.*, 923 A.2d 505, 509–10 (Pa.Super. 2007) (holding, "strict application of the bright-line rule [of Rule 1925 waiver] necessitates strict interpretation of the rules regarding notice of Rule 1925(b) orders." (citation omitted)); *see also* Pa.R.Crim.P. 114(B)-(C); Pa.R.A.P. 1925(b)(2).

Rule 236 states in pertinent part:

**Rule 236. Notice by Prothonotary of Entry of Order or Judgment**

(a) The prothonotary shall immediately give written notice of the entry of
* * *
(2) any other order or judgment to each party's attorney of record or, if unrepresented, to each party. The notice shall include a copy of the order or judgment.

(b) The prothonotary shall note in the docket the giving of the notice and, when a judgment by confession is entered, the mailing of the required notice and documents.

Pa.R.C.P. 236(a)(2), (b).  Rule 236 mandates that the prothonotary give "written notice of the entry of a court order to each party and to note **on the docket** that notice was given." *Id.* at 510 (emphasis added).

> If the docket does not show that notice of the entry of a Rule 1925(b) order was provided to an appellant, then we will not conclude that the appellant's issues have been waived for failure to file a Rule 1925(b) statement.  That a party may have actually received notice is not determinative under circumstances where the docket does not reflect that notice was sent.

*In re L.M.*, 923 A.2d at 510 (emphases added and citations omitted).

In this case, Appellant's counsel inexplicably failed to serve the trial judge a copy of the Rule 1925(b) statement.  *See* Pa.R.A.P. 1925(b).  We decline to find waiver, however, as the docket failed to reflect notice of the entry of the order on Appellant.  *See In re L.M.*, 923 A.2d at 510.  Because counsel's failure to comply with well-settled law does not result in waiver of Appellant's issues on appeal, we return to the procedural history.

Appellant raises the following issue for our review:

> **WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT SMITH'S MOTION TO SUPPRESS WHERE THE EVIDENCE PRESENTED AT SUPPRESSION FAILED TO ESTABLISH THAT THE OFFICER POSSESSED REASONABLE SUSPICION TO SUBJECT HIM TO AN INVESTIGATIVE DETENTION.**

Appellant's brief at 5.

> Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error.  Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the

defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Reppert*, 814 A.2d 1196, 1200 (Pa.Super. 2002) (citations omitted).

We begin by noting that in considering interaction between law enforcement and other citizens, Pennsylvania courts look to whether the subject interaction is a mere encounter, an investigatory detention, or a custodial detention, *i.e.,* an arrest. A mere encounter does not require police to have any level of suspicion that the person is engaged in wrongdoing. *Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa.Super. 2012). At the same time, such an encounter does not carry any official compulsion for the party to stop or respond. *Id.* An investigative detention, however, subjects an individual to a stop and short period of detention. *Id.* This seizure does not involve actions that are so coercive as to comprise the equivalent of an arrest. *Id.* To conduct an investigative detention, police must have reasonable suspicion of criminal activity. *Id.*

On November 19, 2013, Sergeant John Stevens of the Lower Moreland Township Police Department was approaching the intersection of Huntingdon Pike and Byberry Road at about 5:17 a.m. when he observed in the darkness the silhouette of a car parked behind the gas pumps at the Citgo gas/service station. N.T. 6/4/15 at 5. The gas station was still closed for the night and completely dark, and the car was difficult to see behind the

- 5 -

pumps, but Sergeant Stevens was able to make out the car and noticed that its interior and exterior lights were off. Given the station's occasional history of overnight burglaries, including one within the prior year, and because it was the sergeant's 13 years' patrolling experience that cars left overnight at the lot were parked along a boundary fence and not behind the gas pumps, he decided to turn around and investigate the presence of the car. N.T. at 6-7.

Less than two minutes later, Sergeant Stevens drove onto the Citgo lot and slowly approached the subject car. The cabin of the car was dark, but the sergeant could see two individuals inside before the driver, Appellant, immediately started the car and began to pull away, circling around the pumps without ever activating the car's headlights. At this moment, Sergeant Stevens turned on his overhead lights and the car stopped. N.T. at 16-18. As noted above, the sergeant's investigation culminated with his arrest of Appellant on suspicion of DUI.

The parties do not dispute that Sergeant Stevens initiated an investigative detention at the moment he activated his overhead lights to stop Appellant. The question presented is whether the detention was supported by reasonable suspicion of criminal activity.

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. **Commonwealth v. Cook**, 558 Pa. 50, 735 A.2d 673, 676 (1999). "This standard, less stringent than probable cause, is commonly known as reasonable suspicion." **Id.** In order to determine whether the

police officer had reasonable suspicion, the totality of the circumstances must be considered. ***In re D.M.***, 566 Pa. 445, 781 A.2d 1161, 1163 (2001). In making this determination, we must give "due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." ***Cook***, 735 A.2d at 676 (quoting ***Terry v. Ohio***, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, "[e]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer." ***Cook***, 735 A.2d at 676.

***Commonwealth v. Rogers***, 578 Pa. 127, 134, 849 A.2d 1185, 1189 (2004). The reasonable suspicion test "is met 'if the police officer's reasonable and articulable belief that criminal activity was afoot is linked with his observation of suspicious or irregular behavior on behalf of the particular defendant stopped.'" ***Commonwealth v. Kearney***, 601 A .2d 346, 348 (Pa.Super. 1992) (citing ***Commonwealth v. Espada***, 528 A.2d 968 (Pa.Super. 1987)).

We discern from the record that Sergeant Stevens confronted circumstances that were suspicious and irregular when viewed against his thirteen years' experience of patrolling an area very familiar to him. In that sense, the suppression court found, the sergeant presented as a very credible witness whose suspicions were informed by the fact that the community he patrolled was a "really small place" where one "get[s] to know what's what very easily." N.T. at 33. Because it was not the practice of the service station to park cars overnight behind the gas pumps, and the station had been the subject of occasional overnight burglaries, the sergeant

reasonably decided to check the lot more closely. As he approached, he observed two individuals immediately start the vehicle and begin to pull away without turning on the car's headlights. At this moment, the totality of circumstances supplied the sergeant with reasonable suspicion to maintain the *status quo* by detaining the car, and it was only at this point that the sergeant activated his overhead lights and effectuated a traffic stop.

Appellant argues that his case falls squarely under **Commonwealth v. DeWitt**, 608 A.2d 1030 (Pa. 1999). In **DeWitt**, our Supreme Court invalidated a nighttime investigative stop of a car, parked on both the berm and the edge of a church parking lot known to attract juvenile delinquency,[2] after its occupants acted furtively[3] and started-off upon seeing police. The Court first rejected motor vehicle code and trespass-based grounds for the stop before it considered whether the officers' observations created reasonable suspicion warranting a stop under **Terry**. Reasonable suspicion was lacking, the Court reasoned, where neither the location of the car nor the activity in which it was engaged was consistent with the type of reported activity that had previously occurred in the parking lot. This left only the

_____

[2] Testimony established that "the police had received notice from St. Paul's Church to check for suspicious vehicles, i.e., kids, underage drinking, laying rubber, doing donuts in the parking lot and that nature." **Id.** at 530 Pa. 299, 1034 n. 2.

[3] The car was located in an open area with its interior cabin light turned on. The occupants turned the cabin light off and looked as if they were attempting to hide something before placing the car in drive. **Id.** at 1034.

observation of flight,[4] which, the court reasoned, could not by itself support a stop. *DeWitt*, 608 A.2d at 1034.

This Court applied *DeWitt* to discredit an investigative detention of a driver who acted furtively in his parked car upon seeing police. In *Commonwealth v. McClease*, 750 A.2d 320 (Pa.Super. 2000), a post-midnight police patrol was driving down a narrow, car-lined, one-way residential street known for drug, alcohol, and weapon-related crime when officers observed McClease sitting alone in his legally parked car in the darkness underneath a railroad overpass. McClease sat with his head lowered as if he was looking at his hands. As the cruiser was passing, McClease looked up and reacted to the police presence by raising his eyebrows, widening his eyes, and immediately lowering his body. *Id.* at 322-23. The officers stopped and ordered McClease to stay in his vehicle as he was attempting to open the driver's side door. *Id.* at 323. During the course of the stop, officers detected a marijuana blunt, an open container of alcohol, and, pursuant to McClease's invitation to "check the whole car," 39 bags of crack cocaine and 2 bags of marijuana in the trunk. *Id.* Arrested and charged with various drug-related crimes, Appellant filed a motion to suppress evidence, which the court denied. McClease was eventually convicted and sentenced to one to two years' imprisonment.

---

[4] The car only began movement from the scene when police stopped it. Apparently, headlong flight was not attempted. *Id.* at 1034.

A panel majority of this Court vacated judgment of sentence, finding that officers failed to support their investigative detention of McClease with a demonstration that reasonable suspicion of criminal activity existed. The majority reasoned that if in *DeWitt* "the combination of furtive movements, late time of night, previous reports of criminal activity in the area, **even when accompanied by flight**, [did] not establish an adequate basis for reasonable suspicion[,]" then the comparatively weaker evidentiary proffer against McClease—lacking evidence of flight—likewise failed to substantiate an investigative detention. *Id.* at 326.

What distinguishes the case *sub judice* from *DeWitt* and *McClease* is that Appellant's secretive placement of his unilluminated car on a dark, private lot was consistent with a stealth approach one would reasonably expect to find in an overnight burglary attempt. In *DeWitt*, the Supreme Court discerned "absolutely no evidence" that the parked car straddling the boundary between the berm of the road and the edge of the church parking lot was engaged in the type of criminal activity of which police had been previously notified. *Id.* at 1034. In *McClease*, police saw only a man merely present in a high-crime neighborhood, his face cast downward as if looking at his hands while he sat in a car parked legally on a public street. Furtive reactions to a police presence increased the degree of suspicion in each case, but not to a degree where the relatively innocuous underlying behavior otherwise observed by police reasonably could be viewed as part of an ongoing criminal process.

In contrast, the nighttime, after-hours presence of an occupied, darkened car positioned to obscure its detection from the street bore a close nexus to a suspected burglary in progress consistent with past reports of burglaries at the station. It was highly irregular, according to Sergeant Stevens, to see a car parked overnight behind the pumps. When viewed in combination with Appellant's furtive attempt to drive away—forgetting to activate his headlights despite the darkness—in reaction to the arrival of the marked police cruiser, the facts known to the sergeant at that moment justified a brief stop and investigation into why Appellant and his passenger were there and whether the station displayed signs of illegal entry. Accordingly, we hold that Sergeant Stevens was constitutionally authorized to execute a brief stop to maintain the *status quo* while he attempted to obtain more information. As such, we reject as meritless Appellant's challenge to the order denying his motion to suppress evidence of his DUI and related offenses.

Judgment of sentence is affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/4/2016

- 11 -