J-S10021-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMY SARA WALLETT | : | |
| | : | |
| Appellant | : | No. 1677 MDA 2019 |

Appeal from the Judgment of Sentence Entered September 24, 2019,
in the Court of Common Pleas of Cumberland County,
Criminal Division at No(s):  CP-21-CR-0000668-2019.

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:        **FILED: APRIL 27, 2020**

Amy Sara Wallett appeals from the judgment of sentence imposing three days to six months in the county jail after a trial judge found her guilty of driving under the influence.[1]  In this timely appeal, she claims the police officer who pulled her over lacked reasonable suspicion to do so and, as a result, the court of common pleas should have suppressed evidence against her.[2] Because police unreasonably violated Ms. Wallett's state and federal rights of privacy, we vacate the judgment of sentence, reverse the denial of suppression, and remand.

Where, as here, police have obtained no warrant, our standard of review of a suppression court's legal conclusions is *de novo*.  **See Ornelas v. United**

---

[1] 75 Pa.C.S.A. §§ 3802(a)(1) and 3802(c).

[2] **See** Ms. Wallett's Brief at 3.

*States*, 517 U.S. 690 (1996). Still, we must "take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.*, 517 U.S. at 699. Our scope of review is "limited to considering only the evidence of the prevailing party, and so much of the evidence of the non-prevailing party as remains uncontradicted when read in the context of the record as a whole." *In re L.J.*, 79 A.3d 1073, 1080 (Pa. 2013). We may only review the record from the suppression hearing. *See id.*

At this suppression hearing, the Commonwealth called the investigating officer. Ms. Wallett presented no testimony or evidence.

According to the officer, in the early morning of November 18, 2018, she was driving in a marked patrol car through a low-crime, residential neighborhood near Sussex Road and Essex Road in Lower Allen Township. She and other officers were in the area to investigate a report of an illegal fireworks display.

The officer first observed Ms. Wallett in a red Ford Taurus heading southwest on Sussex Rd. She later pulled behind Ms. Wallett's car, and they both headed south for about a block. Ms. Wallet then turned east on Walnut Ln. The officer felt that Ms. Wallett was trying to give her the slip. So the officer turned east on the next street and caught up to Ms. Wallett at a subsequent intersection.

From the officer's observations, Ms. Wallett violated no traffic laws, exhibited no indications that she was DUI, and had no apparent damage or

other defect on her car that would prompt the officer to lend aid. However, Ms. Wallett's route made the officer suspicious, because "it really did not make any sense as to why [the car was] traveling through the neighborhood like that." N.T., 8/29/19, at 10. The officer's "suspicions also began to be raised with this vehicle, because [of] overnight burglaries in this neighborhood in the few months leading up to this, one specifically on Sussex Road, so [that] kind of, heightened [the officer's] suspicion toward the vehicle." *Id.*

The officer offered no testimony to substantiate her logic. Nothing tied Ms. Wallett or her Taurus to either the fireworks investigation or the months-old burglary, beyond the officer's subjective belief that Ms. Wallet's route was odd.

As the officer neared Ms. Wallet for the third time, the officer received a dispatch informing her that "a sedan, red in color . . . might have been a Honda, but it was an older model, had slowed in front of [the 911 caller's] house and then stopped in front of their house." *Id.* Ms. Wallett, who had braked at a stop sign, turned right, *i.e.*, away from the patrol car. The officer turned around and radioed the Taurus' plate number to dispatch. Instead of waiting for a reply to see if additional reasons to stop the vehicle existed, the officer activated her lights and sirens behind Ms. Wallet, who immediately pulled over. The officer arrested Ms. Wallett for DUI, a crime that the officer had no suspicion was occurring prior to the traffic stop.

After the hearing, the suppression court announced its findings of fact and conclusions of law from the bench.[3] The court began its decision by explicitly disregarding the search-and-seizure precedent of the Supreme Court of Pennsylvania. The court said:

> I appreciate the case law provided by defense counsel. The Supreme Court may have made a finding in a similar case [*i.e.*, **Commonwealth v. Adams**, 205 A.3d 1195 (Pa. 2019), *cert. pending* (U.S. 2019),] that runs counter to what I am going to find, but, of course, all of these cases are fact specific.
>
> I find that . . . the totality of the circumstances . . . supplied reasonable suspicion, justifying the officer stopping the car for further investigation. Specifically, I find that the officer was in the [residential] area for investigative purposes. It was after two in the morning. [Ms. Wallett's] driving in this development was unusual and gave the officer reason to pause and question that driving further. [Ms. Wallett's] car was the only car observed by the officer, who was aware of a recent burglary. Whether it was a month or months ago, the officer at the time of the stop was aware of the burglary, and then received dispatch from a resident of an intersection or neighboring street, which identified a car similar to the one [Ms. Wallett] was driving which the officer observed.
>
> Based on those facts, I find that there were specific, articulable facts justifying the stop for further investigation.

N.T., 8/29/19, at 22-23. Thus, the suppression court held that, as a matter of constitutional law, police had reasonable suspicion to detain Ms. Wallett for further investigation. The trial court later convicted Ms. Wallett on two counts

---

[3] The court of common pleas provided no further opinion on this issue.

of DUI, first offense. It sentenced her as described above, and this appeal followed.

On appeal, Ms. Wallett claims, as she did below, that the recent decision in **Adams** controls this case. The Commonwealth adopts the suppression's court reasoning and urges us to affirm. **See** Commonwealth's Brief at 10-12.

Neither the Constitution of the United States nor the Constitution of the Commonwealth of Pennsylvania permits us to do as the Commonwealth asks. The federal constitution provides that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. Amend. IV. Similarly, under our state charter, "The people shall be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause . . . ." Pa. Const. Art. I, § 8.

Even accepting all of the facts the suppression court found as true, that court's rationale violates the Fourth Amendment and Article I, § 8. Critically absent from the suppression court's analysis and from the Commonwealth's evidence is any fact connecting Ms. Wallett or her car to any crime that may have been afoot with the degree of individualized particularity that the two constitutions demand.

The parties agree that, when the officer activated her lights and sirens,[4] she seized Ms. Wallett's vehicle and person and initiated an investigative detention, as known as a **Terry** stop. To execute a **Terry** stop investigating officers must, at a minimum, possess reasonable suspicion. **See**, **e.g.**, **Commonwealth v. Holmes**, 14 A.3d 89 (Pa. 2010). **See also Terry v. Ohio**, 392 U.S. 1 (1968) (holding that the Fourth Amendment permits police to stop a suspect to conduct a brief investigative detention, if police have reasonable suspicion that the person has committed, is committing, or is about to commit a crime).

Under **Holmes** and **Terry**, reasonable suspicion arises if "a police officer [can] point to 'specific and articulable facts' leading him to suspect criminal activity is afoot . . . an officer must be able to point to specific and articulable facts which led [her] to reasonably suspect a violation of" the law. **Holmes**, 14 A.3d at 95-96 (quoting **Terry**) (some punctuation omitted).

"[T]he Fourth Amendment becomes meaningful only when it is assured that . . . the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge, who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances." **Terry**, 392 U.S. at 21. In making that assessment, the High Court emphasized, "it is imperative that the facts be judged against an

_____

[4] **See Commonwealth v. Livingstone**, 174 A.3d 609 (Pa. 2017) (ruling that an investigative detention results if an officer activates her cruiser's lights).

objective standard: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" *Id.* at 21-22 (some punctuation omitted). "[I]n determining whether the officer acted reasonably . . . due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.* at 27.

In the matter at bar, neither the Commonwealth nor the court below identified any "specific or articulable facts to support a belief that [Ms. Wallett] was engaged or going to be engaging in criminal activity." *Commonwealth v. Adams*, 205 A.3d at 1206. Instead, the officer possessed only "inchoate and unparticularized suspicion" that Ms. Wallett might be a burglar. *Terry*, *supra* at 27. This type of generalized suspicion *Terry* and *Adams* forbid. Thus, the suppression court should have adhered to *Adams*.

In *Adams*, a patrol officer observed a car travel to the rear of a shopping plaza in the wee hours of the morning. Suspecting that the driver had no legitimate reason to go there at 3:00 am, the officer drove his marked patrol car to the rear of the strip mall to investigate. The investigation revealed that the driver was DUI. However, nothing about Adam's manner of driving clued the officer as to that possibility.

Adams moved to suppress the Commonwealth's evidence. The court of common pleas concluded that their interaction was a mere encounter, denied suppression, and convicted Adams. On appeal, this Court affirmed.

The Supreme Court of Pennsylvania reversed. First, it ruled the officer initiated an investigative detention as opposed to a mere encounter. Next, the High Court rejected the Commonwealth's alternative theory that the police had reasonable suspicion to investigate the driver, given the time and place of his car's location behind the shopping plaza.

The **Adams** Court explained:

> Prior to the investigative detention, the only facts that Officer Falconio articulated were that a car was parked behind a closed business on public property at night. Officer Falconio did not observe Adams making any furtive or suspicious movements, nor had he received notice of criminal behavior occurring in that location, as the troopers had in [**Commonwealth v. DeWitt**, 608 A.2d 1030 (Pa. 1992]. Officer Falconio's testimony evinced only generalized concerns about the possibility of criminal activity occurring, based solely upon time and place, *i.e.*, behind closed businesses at night. He provided **no specific or articulable facts** to support a belief that Adams was engaged or going to be engaging in criminal activity. Rather, in his testimony, he expressed more of a curiosity about what the driver was doing behind the closed businesses. **See** N.T., 8/25/2016, at 6, 9 (Officer Falconio testifying that he followed the vehicle behind the businesses because he wanted "to see what the occupant or occupants of the vehicle were doing," "to see why a car drove behind two dark, closed businesses at three o'clock in the morning," and to ensure that "there wasn't drug activity or an attempted burglary"). As in **DeWitt**, here Officer Falconio offered no testimony that he observed Adams commit any criminal offense or that Adams took any actions that might suggest that he was about to commit any criminal offense. Officer Falconio merely observed a man sitting in his car at night.

**Adams**, 205 A.3d at 1206 (emphasis added).

Here, as in **Adams**, the suppression court found no conduct by Ms. Wallett indicating to a reasonable person that she had engaged in, was engaging in, or was about to engage in any specific crime. Indeed, the two crimes that the investigating officer referenced in her testimony were unconnected to Ms. Wallett or her vehicle.

First, the officer testified that she was in the neighborhood to investigate a report of someone shooting illegal fireworks. Nothing in that report tied the fireworks to Ms. Wallett or her red sedan, and no one could reasonably infer that someone driving slowly around a residential neighbor at 2:00 am may have recently fired off fireworks. The first factual finding of the suppression court — *i.e.*, that the officer was in the area for investigative purposes — is irrelevant as to whether that officer had reasonable suspicion regarding Ms. Wallett. The officer was unable to link that initial investigation into illegal fireworks to Ms. Wallett; thus, the suppression court and the Commonwealth may not conjure reasonable suspicion from that investigation. This officer held no better starting position to justify stopping Ms. Wallett's car than Officer Falconio in **Adams**. In both cases, when both officers first observed their respective suspects, neither one had anything of substance on either driver.

Alternatively, the officer in this matter suspected that burglary might be afoot, because she was tangentially aware that a break-in occurred a few months ago in the same neighborhood. However, the officer was not involved with that investigation, and she could not provide any details concerning it. **See** N.T., 8/29/19, at 16-17. Again, nothing links the officer's suspicion to

- 9 -

Ms. Wallett or her red Taurus. The suppression court only found that "the officer at the time of the stop was aware of the burglary." N.T., 8/29/19, at 23. An officer's awareness that someone, on some night, on some road, committed some crime does not satisfy the constitutional requirement that police "point to 'specific and articulable facts' leading [them] to suspect criminal activity *is* afoot." *Holmes*, 14 A.3d 95 (emphasis added). Otherwise, there would be no limit to the policing power. Investigators could randomly detain any person they desired and later justify their intrusion by claiming that someone in the area had broken the law at some point. Our constitutions prohibit this type of generalized justification for governmental intrusion.

Here, the officer's vague awareness of a past burglary only proves that, at some time, crime *had been* afoot in the neighborhood. Hence, it does not establish that a crime was ongoing or that Ms. Wallett had a hand in it.

Having dismissed these proposed justifications for the traffic stop as constitutionally infirm, we turn to the suppression court's remaining findings. The Commonwealth retains only a smattering of disjointed facts that fail to support the officer's *Terry* stop: (1) it was after 2:00 am when the officer saw Ms. Wallett driving slowly but legally through a residential neighborhood; (2) the officer considered Ms. Wallett's round-about route to be suspicious; and (3) the officer received a radio dispatch identifying Ms. Wallett's car as having stopped for a bit in front of the caller's home.

These facts, individually or collectively, do not and did not rise to the level of criminal activity, and did not give the officer reasonable suspicion to

believe that Ms. Wallett committed a crime or that she was about to commit one. The officer's suspicion that Ms. Wallett must have been up to something, because she was driving around the area in a pattern that the officer considered odd, is nothing more than a hunch that Ms. Wallett might be up to something illegal. This is identical to Officer Falconio's hunch in **Adams** that arose from the time and place where the suspect drove his car. And like **Adams**, the officer in this case was only suspicious that something must be amiss, because it was 2:20 am and the red sedan was driving through a neighborhood in a direction the police officer considered odd.

Thus, the suppression court erred when it failed to apply **Adams** and declined to suppress the Commonwealth's evidence. Ms. Wallett's location was even **less suspicious** than the suspect's location in **Adams**, because Ms. Wallett was driving on public streets. Adams, by contrast, had disappeared for an extended period behind a closed shopping plaza. The officer in **Adams** could at least contend Adams was potentially trying to break into a store from the rear. Here, the officer could not even claim that much.

This officer merely saw a woman driving her car at night. Ms. Wallett was free to do so with her constitutional rights intact.[5]

---

[5] If the officer wished to follow-up on her hunch that Ms. Wallett might be the area's burglar, she could have tailed Ms. Wallett until the officer had "specific articulable facts" that a crime was underway. For example, the officer should have waited until Ms. Wallett committed an act that would cause a reasonable person to believe she was about to rob a home. Alternatively, the officer could have followed Ms. Wallett until she violated a provision of the Vehicle Code or drove in a manner consistent with DUI.

The Commonwealth produced no evidence that the officer observed Ms. Wallett commit any criminal offense or that any actions suggesting that she was about to commit a criminal offense. ***See Adams***, 205 A.3d at 1206. The traffic stop therefore violated Ms. Wallett's rights under both the Fourth Amendment and Article I, § 8, and the court of common pleas should have suppressed all of the evidence that the officer obtained from the illegal stop. ***See***, ***e.g.***, ***Wong Son v. United States***, 371 U.S. 471 (1963) (dictating the suppression of the prosecution's evidence when, as here, it is fruit of the poisonous tree).

Judgment of sentence vacated, order denying suppression reversed, case remanded for further proceedings consistent with this decision.

Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/27/2020