J-S10033-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RYAN DAVID NAWN | : | |
| | : | |
| Appellant | : | No. 1414 EDA 2022 |

Appeal from the Judgment of Sentence Entered May 11, 2022
In the Court of Common Pleas of Bucks County
Criminal Division at No: CP-09-CR-0005518-2020

BEFORE: PANELLA, P.J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY STABILE, J.: **FILED JULY 27, 2023**

Appellant, Ryan David Nawn appeals from the May 11, 2022 judgment of sentence imposing an aggregate four to eight years of incarceration for possession of a firearm by a prohibited person and possession of a firearm without a license (18 Pa.C.S.A. §§ 6105 and 6106). We affirm.

The trial court recited the pertinent facts in its Pa.R.A.P. 1925(a) opinion:

> On July 13, 2020, at approximately 6:45 a.m., Officer Bryan Hearn ("Hearn") of the Bensalem Township Police Department, was dispatched to 3325 Street Road, Bensalem Township, Bucks County, for a well-being check of a person passed out on a motorcycle under an awning in the drive thru lane of the Police and Fire Federal Credit Union ("PFFCU"). Upon arrival, Hearn noticed the motorcycle did not have a license plate affixed to it. Hearn made contact with the person on the motorcycle by waking him and asking if he was okay. In the meantime, fellow Bensalem

Township Police officer Pettine ("Pettine")[1] arrived on the scene. The person on the motorcycle indicated he had been at Parx Casino and went under the awning to avoid heavy rain. Hearn asked the person for identification, and was provided the driver's license of [Appellant]. Hearn ran [Appellant's] name through police dispatch, which determined he had an active warrant for his arrest. As a result, Hearn and Pettine approached [Appellant] from both sides of his motorcycle to arrest him. [Appellant] attempted to start his motorcycle and flee the scene, but the officers thwarted his attempt. [Appellant] then ran from the officers. After a short foot chase, Hearn tackled [Appellant] and arrested him. [Appellant] advised police he had a firearm in his pocket which was then seized.

Trial Court Opinion, 9/29/22, at 1-2.

Appellant filed a pretrial motion to suppress the evidence of the firearm, arguing that he had been subjected to an unlawful detention prior to Hearns' discovery of the outstanding arrest warrant. The trial court conducted a hearing on April 18, 2022 and denied the motion. The parties proceeded to a May 11, 2022 bench trial, at the conclusion of which the trial court found Appellant guilty of the aforementioned charges. This timely appeal followed. The only issue before us is whether the trial court erred in denying Appellant's motion to suppress the handgun seized incident to his arrest.

> [O]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider

---

[1] Officer Pettine did not testify in this matter, and his first name is not of record.

only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. Singleton*, 169 A.3d 79, 82 (Pa. Super. 2017) (internal citations and quotation marks omitted), *appeal denied*, 181 A.3d 1080 (Pa. 2018). The Fourth Amendment to the United States Constitution and Article I, § 8 of the Pennsylvania Constitution protect citizens against unreasonable searches and seizures by law enforcement. U.S. CONST. amend IV; PA CONST. art. I, § 8. A warrantless search and seizure is permissible in limited circumstances. One of these is an investigative detention supported by reasonable suspicion that the detainee is involved in criminal activity. *Commonwealth v. Adams*, 205 A.3d 1195, 1199-1200 (Pa. 2019), *cert. denied*, 140 S.Ct. 2703 (2020).

> [A] brief investigatory detention is permissible only if the police officer 'observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot.' In such circumstances, he or she may briefly stop the suspicious person and make 'reasonable inquiries' aimed at confirming or dispelling his suspicions.

*Id.* at 1203 (**quoting** *Terry v. Ohio*, 329 U.S. 1, 30 (1968)).

Appellant argues that he was subjected to an unlawful investigative detention when he asked Hearn to return his driver's license to him and Hearn refused. Appellant argues Hearn had no reasonable suspicion in support of detaining Appellant at that time. Appellant relies on *Commonwealth v. DeWitt*, 608 A.2d 1030 (Pa. 1992), in which our Supreme Court affirmed the

- 3 -

trial court's suppression order (reversing this Court) where police investigated a car, parked along a street in the opposite direction of traffic, with its interior lights on but its exterior lights off. The defendant was arrested for illegal drugs in plain view in the car. Our Supreme Court reasoned that the car could have arrived at its location from an adjacent parking lot, rather than by traveling opposite oncoming traffic. The officer's belief that the vehicle might have been disabled was not supported by the evidence. Because there was no probable cause to suspect a vehicle code violation, police had no valid reason for the vehicle stop. *Id.* at 1032-34.

Appellant also relies on **Adams**, wherein police were investigating a car parked behind a closed business. The officer received no specific information about the car and articulated only general concerns about the location of the vehicle and the time of day. **Adams**, 205 A.3d at 1206. Citing **DeWitt**, our Supreme Court explained that reasonable suspicion did not arise merely from the location of the car and the time of night when the officer observed it. *Id.* at 1206-07.

Appellant's reliance on **Adams** and **DeWitt** is misplaced. Assuming for purposes of argument that Appellant was not free to leave while Hearn had Appellant's driver's license (the parties dispute this point), the encounter was a lawful investigative detention supported by reasonable suspicion. The Pennsylvania Motor Vehicle Code provides as follows:

> (b) Authority of police officer. — Whenever a police officer
> is engaged in a systematic program of checking vehicles or drivers

or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b). Where a vehicle stop allows the officer to gather information relevant to a possible Motor Vehicle Code violation, the stop is permissible under **Terry** and § 6308(b). **Commonwealth v. Chase**, 960 A.2d 108 (Pa. 2008).

In this case, unlike **DeWitt** and **Adams**, Hearn had reason to investigate a possible vehicle code violation because Hearn observed that Appellant's motorcycle had no visible registration plate attached to it. The Motor Vehicle Code provides that "[e]very registration plate shall, **at all times**, be securely fastened to the vehicle to which it is assigned or on which its use is authorized in accordance with regulations promulgated by the department." 75 Pa.C.S.A. § 1332(a) (emphasis added). Hearn testified during the suppression hearing that he noticed the absence of a registration plate as he first approached the motorcycle, before waking Appellant. N.T. 4/18/22, at 13, 25, 41. After waking Appellant, Hearn asked him for identification and asked him if he had a registration plate for the motorcycle. **Id.** at 15. At first, Appellant provided only his driver's license. **Id.** Hearn forwarded that information to the dispatcher and learned of Appellant's outstanding arrest warrant. **Id.** Hearn then approached Appellant again, at

which point Appellant "handed" Hearn the motorcycle's registration plate, which had been stored somewhere on the bike but not affixed to it. *Id.* at 16. Hearn placed the registration plate on the ground and asked Appellant to step off the motorcycle. *Id.*

Because Hearn observed that Appellant did not have his registration plate affixed to his motorcycle, as required by § 1332(a), Hearn had reasonable suspicion to investigate under § 6308(b). And by the time Appellant produced the missing license plate, Hearn was aware of the outstanding arrest warrant. The encounter therefore proceeded from a lawful investigative detention to a lawful arrest. The trial court did not err in denying Appellant's motion to suppress the handgun seized from Appellant's pocket pursuant to a lawful arrest.

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

Date: 7/27/2023

- 6 -