COMMONWEALTH of Pennsylvania, Appellant

v.

Kenneth James HILL, Appellee.

Superior Court of Pennsylvania.

Argued Sept. 15, 2004.

Filed April 26, 2005.

Richard A. Hernan Jr., Assistant District Attorney, Greene, for Commonwealth, appellant.

Robert C. Greene, Greene, for appellee.

Before: JOYCE, BENDER and BOWES, JJ.

OPINION BY BOWES, J.:

¶ 1 The Commonwealth appeals from the January 27, 2004 order granting the pretrial suppression motion filed by Kenneth James Hill. We affirm.

¶ 2 The following principles are pertinent to our review:

> [W]here a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. Pa. R.Crim. P. 323(h). *See Commonwealth v. Iannaccio,* 505 Pa. 414, 480 A.2d 966 (1984), *cert. denied,* 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985). In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record. *Commonwealth v. Monarch,* 510 Pa. 138, 147, 507 A.2d 74, 78 (1986). If so, we are bound by those findings. *Commonwealth v. James,* 506 Pa. 526, 533, 486 A.2d 376, 379 (1985). Where, as here, it is the Commonwealth who is appealing the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncon-

tradicted. *Commonwealth v. James,* 506 Pa. at 532–33, 486 A.2d at 379; *Commonwealth v. Hamlin,* 503 Pa. 210, 216, 469 A.2d 137, 139 (1983). *Commonwealth v. DeWitt,* 530 Pa. 299, 301–02, 608 A.2d 1030, 1031 (1992) (footnote omitted). Moreover, if the evidence when so viewed supports the factual findings of the suppression court, this Court will reverse only if there is an error in the legal conclusions drawn from those findings. *Commonwealth v. Reddix,* 355 Pa.Super. 514, 513 A.2d 1041, 1042 (Pa.Super.1986).

*Commonwealth v. Lindblom,* 854 A.2d 604, 605–606 (Pa.Super.2004).

¶ 3 In the instant case, Pennsylvania State Police Trooper Ryan Nuhfer, the Commonwealth's sole witness at the suppression hearing, testified as follows. At approximately 1:00 a.m. on October 26, 2003, Trooper Nuhfer and his partner, Trooper Todd Koebley, were traveling east on Old Garland Road in Pittsfield Township, Warren County, in a marked police vehicle when they saw a Dodge pickup truck driven by Appellee traveling in front of them in the same direction. When the police vehicle drew to within nine car lengths of the pickup truck, Appellee pulled over to the side of the road and stopped. At that point, Officer Koebley, who was driving, pulled over behind the truck, activated his vehicle's overhead flashing lights, and approached the truck to ascertain whether Appellee needed assistance. When Officer Koebley spoke to Appellee, he detected an odor of alcohol on Appellee's breath; following a brief investigation, the officers arrested Appellee for driving under the influence of alcohol.

¶ 4 Appellee also testified at the suppression hearing. He stated that shortly after leaving the Blue Eye Inn, a local tavern, he saw a "flash" of light in his rear view mirror and determined that another

vehicle was approaching his truck. N.T. Suppression hearing, 1/26/04, at 15. Appellee testified that he pulled to the side of the road in an effort to let the other vehicle pass; however, the driver of the other vehicle immediately pulled in behind him. Appellee initially considered leaving the area because he did not know who was behind him, but when Trooper Koebley activated the police vehicle's overhead flashing lights, Appellee felt compelled to stay.

¶ 5 The suppression court found that Appellee had not committed any traffic violations in the troopers' presence; rather, he "safely pulled [his truck] to the side of the road." *Id.* at 24. In addition, the court concluded that "[Appellee] was not doing anything which would [have led] the police officers to believe that he needed assistance, other than safely pulling off the road." *Id.* at 27. The court subsequently granted Appellee's motion to suppress all evidence obtained as a result of the traffic stop by order dated January 27, 2004. This timely Commonwealth appeal followed.

¶ 6 On appeal, the Commonwealth contends that the suppression court erred in: (1) determining that the troopers' initial interaction with Appellee amounted to seizure rather than a mere encounter; (2) concluding that on the night in question, Appellee did not drive his truck in a manner which would have indicated that he needed assistance; and (3) failing to consider "the unique difficulties surrounding the initiation of encounters with a motorist, as discussed in *Commonwealth v. Johonoson*, 844 A.2d 556, 2004 WL 112763 (Pa.Super.2004)." Commonwealth brief at 6.

¶ 7 The Commonwealth initially argues that the suppression court erred in determining that the troopers effected a seizure when they activated their vehicle's overhead flashing lights before approaching Appellee's pickup truck. With respect to this issue, our Supreme Court has stated as follows:

A primary purpose of both the Fourth Amendment and Article I, Section 8 "is to protect citizens from unreasonable searches and seizures." *In the Interest of D.M.*, 566 Pa. 445, 781 A.2d 1161, 1163 (Pa.2001). Not every encounter between citizens and the police is so intrusive as to amount to a "seizure" triggering constitutional concerns. *See Commonwealth v. Boswell,* 554 Pa. 275, 721 A.2d 336, 340 (Pa.1998) (opinion in support of affirmance) (citing *Terry v. Ohio,* 392 U.S. 1, 20 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). This Court has noted that there are three basic categories of interactions between citizens and the police. The first category, a mere encounter or request for information, does not need to be supported by any level of suspicion, and does not carry any official compulsion to stop or respond. The second category, an investigative detention, derives from *Terry v. Ohio* and its progeny: such a detention is lawful if supported by reasonable suspicion because, although it subjects a suspect to a stop and a period of detention, it does not involve such coercive conditions as to constitute the functional equivalent of an arrest. The final category, the arrest or custodial detention, must be supported by probable cause. *See [Commonwealth v.] Ellis,* [541 Pa. 285,] 662 A.2d [1043] at 1047–48 [(1995)]; *see also In the Interest of D.M.,* 781 A.2d at 1164. This Court has acknowledged this approach to police/citizen encounters under both the Fourth Amendment and Article I, Section 8. *See Commonwealth v. Polo,* 563 Pa. 218, 759 A.2d 372, 375 (Pa.2000) (construing Article I, Section 8); *Ellis,*

662 A.2d at 1047 ("Fourth Amendment jurisprudence has led to the development of three categories of interactions between citizens and police.").

*Johonoson, supra* at 561–62 (quoting *Commonwealth v. Smith*, 575 Pa. 203, 211–212, 836 A.2d 5, 10 (2003)).

¶ 8 Herein, the Commonwealth essentially argues that pursuant to this Court's decision in *Johonoson, supra*, the suppression court erred as a matter of law in determining that a seizure occurred when Trooper Koebley activated his vehicle's overhead flashing lights.

¶ 9 In *Johonoson*, a police officer was operating a police vehicle at approximately 3:00 a.m. when he noticed the defendant driving on a rural road in Chester County. The defendant was "driving substantially lower than the speed limit, with his four-way hazard lights flashing." *Id.* at 558. The defendant then pulled his vehicle, which had been damaged in an accident, to the side of the road. As a result, the officer pulled in behind the defendant, activated the police vehicle's overhead lights as a safety precaution, and walked up to the defendant's car in order to determine if assistance was needed. When he approached the defendant's vehicle, the officer observed indicia of intoxication, and the defendant subsequently was arrested and convicted of driving under the influence of alcohol.

¶ 10 The defendant appealed, alleging, *inter alia*, that the trial court erred in denying his supplemental motion to suppress evidence, wherein the defendant claimed that the roadside encounter amounted to an illegal investigative detention. We denied relief on the basis that the defendant's supplemental motion was untimely filed and then observed that there was no basis for granting the motion because the police officer did not effect a seizure by activating his vehicle's overhead lights. We specifically stated:

[The defendant] relies almost exclusively on [the officer's] flashing lights as a signal that he was "not free to leave," thus making the interaction an investigative detention. We recognize that flashing overhead lights, when used to pull a vehicle over, are a strong signal that a police officer is stopping a vehicle and that the driver is not free to terminate this encounter. The same is not necessarily true under the factual circumstances presented here. It is one traditional function of State Troopers, and indeed all police officers patrolling our highways, to help motorists who are stranded or who may otherwise need assistance. Such assistance is to be expected, and is generally considered welcome.

Often, and particularly at night, there is simply no way to render this aid safely without first activating the police cruiser's overhead lights. This act serves several functions, including avoiding a collision on the highway, and potentially calling additional aid to the scene. Moreover, by activating the overhead lights, the officer signals to the motorist that it is actually a police officer (rather than a potentially dangerous stranger) who is approaching.

By pulling over to the side of the road at 3:00 in the morning on a rural road, after driving slowly with his hazard lights on, Appellant should have had reason to expect that a police officer would pull over and attempt to render aid. Indeed, by his own repeated admissions, Appellant had recently been in a serious accident and was lost on a dark country road. Appellant is exactly the sort of person whom Trooper Perloff has a duty to assist. The fact that Trooper Perloff activated his lights in the course of doing so does not turn the interaction into

an investigative detention. Rather, it remained a mere encounter for which no suspicion of illegal activity was required. *Id.* at 562 (emphasis in original). Consistent with this view, we stated that the interaction between the defendant and the investigating officer constituted a mere encounter until they met "face to face." *Id.* at 563.

¶ 11 In the case at bar, the Commonwealth argues that the suppression court's determination was in error because Troopers Koebley and Nuhfer merely were attempting to discern whether Appellee needed assistance when they pulled in behind his truck and activated their overhead lights. Accordingly, the Commonwealth asserts that in this case, as in *Johonoson,* the interaction amounted to a mere encounter until the investigating officer, Trooper Koebley, spoke to Appellee and detected signs of intoxication.

¶ 12 The Commonwealth's reliance on *Johonoson* is misplaced. Unlike the driver in that case, who was traveling well below the speed limit on a rural road at 3:00 a.m. with his hazard lights activated, Appellee did nothing more than pull his truck to the side of the road in an effort to allow another motorist to pass. Appellee had no reason to expect that a police officer would stop to render aid. Indeed, Appellee testified that when the oncoming vehicle pulled in behind him, he considered leaving until Trooper Koebley activated his overhead flashing lights.

¶ 13 More importantly, however, Officer Nuhfer conceded on cross-examination that Appellee was not free to terminate the encounter once Trooper Koebley activated his overhead lights, stating, "Once the emergency lights were activated ... [Appellee] would have been required to stay stopped." N.T. Suppression hearing, 1/26/04, at 11. Hence, the record fully supports the suppression court's determi-

nation that the initial interaction amounted to a seizure rather than a mere encounter. Accordingly, the Commonwealth's first claim lacks merit.

■ ¶ 14 Next, the Commonwealth argues that the suppression court erred in finding that prior to the interaction, Appellee did not drive his truck in a manner which would have indicated that he needed assistance. The Commonwealth posits that since Trooper Nuhfer testified that Appellee's vehicle "pulled to the right and stopped abruptly," the troopers had sufficient reason to stop and investigate. *Id.* at 4. In essence, the Commonwealth argues that the record does not support the suppression court's determination that Appellee operated his vehicle in a safe manner at all times because Trooper Nuhfer testified that Appellee pulled to the side of the road in an abrupt manner. Further, the Commonwealth contends that the time and location of the stop constituted additional factors which suggested that Appellee may have required assistance.

¶ 15 Based on our review of Trooper Nuhfer's testimony, we reject the Commonwealth's arguments. Initially, we note that Trooper Nuhfer admitted that he did not observe Appellee commit any traffic violations, *see id.* at 8; hence, we find ample support for the suppression court's determination that Appellee operated his vehicle in a safe manner at all relevant times on the night in question. Second, Trooper Nuhfer testified that Appellee was not free to leave the scene after Trooper Koebley activated his vehicle's overhead emergency lights. Therefore, we conclude that Appellee was subjected to an investigatory detention, which must be supported by a reasonable suspicion of criminal activity. *See Commonwealth v. Ellis, supra.* Since Trooper Nuhfer failed to articulate facts at the suppression hearing that would give rise to a reasonable

suspicion of criminal activity, we find that the detention was invalid.

¶ 16 The Commonwealth's final contention on appeal is that the suppression court erred in failing to consider "the unique difficulties surrounding the initiation of encounters with a motorist, as discussed in *Commonwealth v. Johonoson*, [*supra*]." Commonwealth brief at 6. This claim is premised on the assertion that "[t]he case at bar is nearly indistinguishable from *Johonoson*, including the nighttime hour, the voluntary stop at the side of the road, and the use of overhead flashing lights for safety." *Id.* at 14. As we already have determined that *Johonoson* is inapposite, we need not address this claim further.

¶ 17 Order affirmed.

¶ 18 Judge JOYCE files a Dissenting Opinion.

## DISSENTING OPINION BY JOYCE, J.:

¶ 1 I do not agree that Appellee was subjected to an investigative detention when he pulled his vehicle to the side of the road and was subsequently approached by a police officer after he activated his overhead lights. Therefore, I respectfully dissent.

¶ 2 Normally, when an officer effectuates a traffic stop, this is considered an investigative detention. However, in this case, Appellee pulled his vehicle to the side of the road to let the car behind him pass. By his own testimony, Appellee did not pull his vehicle over because his thought it was a police officer behind him. In fact, he contemplated leaving because he did not know who it was that parked behind him. Our courts have found that when an officer approaches an individual sitting in a car, a mere encounter has occurred. *See Commonwealth v. Blair*, 860 A.2d 567 (Pa.Super.2004) (it was a "mere encounter" when the officer, responding to a report of a domestic dispute and aware that domestic disputes are volatile, approached the vehicle parked directly in front of that address and spoke to the occupants); *Commonwealth v. McClease*, 750 A.2d 320 (Pa.Super.2000) (when police officers observed defendant in his car, backed up their cruiser to be abreast with defendant's car, and exited their vehicle to approach him was a mere encounter); *Commonwealth v. DeHart*, 745 A.2d 633 (Pa.Super.2000) (the officers acts of stopping their vehicle next to defendant's parked vehicle, rolling down their window, gesturing that defendant do the same, and questioning defendant was a mere encounter).[1] Thus, the question becomes, when the officers turned on the overhead lights and one officer approached Appellee's vehicle, did the level of intrusiveness cause the encounter to rise from a mere encounter to an investigative detention?[2]

¶ 3 "A mere encounter is characterized by limited police presence and police conduct and questions that are not suggestive of coercion. It is only when such police presence becomes *too* intrusive, the inter-

---

1. In *McClease*, the mere encounter rose to an investigative detention when one of the two advancing officer's ordered defendant to remain in his car. In *Blair*, "mere encounter" changed its nature and rose to the level of an "investigative detention" only after Appellant attempted to exit the vehicle and was ordered several times by the officer to remain therein. In *Dehart*, the mere encounter rose to an investigative detention when, after questioning the defendant and finding out nothing was wrong, they exited their vehicle and began to question him further, particularly when the appellant's vehicle was blocked from its movement.

2. The record reflects that one officer remained in the police cruiser while the other approached Appellee's truck.

action must be deemed an investigative detention or seizure." *Commonwealth v. Reppert,* 814 A.2d 1196 (Pa.Super.2002) citing *Commonwealth v. Beasley,* 761 A.2d 621, 624 (Pa.Super.2000) (emphasis added). Thus, the law recognizes *some* level of intrusiveness when a mere encounter occurs.

> To determine whether a mere encounter rises to the level of an investigatory detention, we must discern whether, as a matter of law, the police conducted a seizure of the person involved. To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was *not free to decline the officer's request* or otherwise terminate the encounter.

*Reppert, supra,* 814 A.2d at 1201–1202 (citation omitted).

¶ 4 To support the contention that the interaction remained a mere encounter the Commonwealth relies heavily on this Court's recent decision of *Commonwealth v. Johonoson,* 844 A.2d 556 (Pa.Super.2004). In *Johonoson,* the Court reasoned that because the police did not initiate the stop, the mere fact that the overhead lights were used did not elevate the seizure from a mere encounter to an investigatory detention. The Majority, in distinguishing *Johonoson,* states that the Commonwealth's reliance on that case is misplaced. The Majority cites to the fact that Mr. Johonoson "was traveling well below the speed limit on a rural road at 3:00 a.m. with his hazard lights activated, [while] Appellee did nothing more than pull his truck to the side of the road in an effort to allow another motorist to pass." Majority Opinion, at 1219. These factors are irrelevant, though, in the context of a

mere encounter because "a mere encounter or request for information, *does not need to be supported by any level of suspicion,* and does not carry any official compulsion to stop or respond." *Commonwealth v. Smith,* 575 Pa. 203, 836 A.2d 5, 10 (2003). Appellee's driving would only be relevant in determining whether or not the police had a reasonable and articulable suspicion that criminal activity was afoot so to conduct an investigative detention. *Id.* Since it is uncontradicted that the police did not initiate the stop, but that Appellee did so of his own accord, Appellee's driving in this case is of no moment.

¶ 5 Moreover, I note that the portion of that decision which the Commonwealth argues controls the outcome is this case is *dictum.* The issue of whether the police had illegally seized Mr. Johonoson was found to be waived by the trial court due to the untimely filing of the supplemental suppression motion. This Court affirmed that finding. Despite the fact that the issue was waived, the *Johonoson* Court opted to conduct an analysis as to whether Mr. Johonoson was subjected to a mere encounter or an investigatory detention, which is the portion of the opinion upon which the Commonwealth relies. Although a *dictum* does not constitute binding precedent, it is nonetheless entitled to consideration. *Valles v. Albert Einstein Medical Center,* 758 A.2d 1238, 1246 (Pa.Super.2000). I find the *dictum* in *Johonoson* is persuasive and sound in legal theory so to be applicable to the case at bar. In *Johonoson,* the Court stated:

> Appellant relies almost exclusively on Trooper Perloff's flashing lights as a signal that he was "not free to leave," thus making the interaction an investigative detention. We recognize that flashing overhead lights, when used to pull a vehicle over, are a strong signal

that a police officer is stopping a vehicle and that the driver is not free to terminate this encounter. The same is not necessarily true under the factual circumstances presented here. It is one traditional function of State Troopers, and indeed all police officers patrolling our highways, to help motorists who are stranded or who may otherwise need assistance. Such assistance is to be expected, and is generally considered welcome.

Often, and particularly at night, there is simply no way to render this aid safely without first activating the police cruiser's overhead lights. This act serves several functions, including avoiding a collision on the highway, and potentially calling additional aid to the scene. Moreover, by activating the overhead lights, the officer signals to the motorist that it is actually a police officer (rather than a potentially dangerous stranger) who is approaching.

*Id.* at 562.

¶ 6 In my view, the only viable remaining question is whether Appellee subjectively believed that he was not free to leave when the officer's turned on the overhead lights after he pulled his vehicle to the side of the road. The Majority posits that this must have been the case because "Officer Nuhfer conceded on cross-examination that Appellee was not free to terminate the encounter once Trooper Koebley activated his overhead lights...." Majority Opinion, at 1219.

However, our Courts employ the following objective standard to discern whether a person has been seized: "[W]hether, under all the circumstances surrounding the incident at issue, a reasonable person would believe he was free to leave." *McClease, supra,* 750 A.2d at 324. The officer's subjective and factual averment that Appellee was not free to leave is immaterial to making a legal determination as to whether a reasonable person would believe he was free to leave.

¶ 7 A reasonable person who is pulled over on the side of the road and then becomes aware that a police officer has pulled up behind him would be aware that the officer is effectuating his duty to check on the safety and well-being of that motorist. An officer who does not stop to inquire of or render aid to a motorist stopped along the side of a road late at night would be in dereliction of his duty. The use of his overhead lights under these circumstances would not be perceived by a reasonable person as a show of authority, but as a matter of protocol to ensure that oncoming traffic is aware of the officer's and motorist's presence on the side of the road or to alert of any other hazard that may exist. Here, while Appellee may have felt that it was a show of authority, this belief is likely symptomatic of his guilty conscience since he was, in fact, driving under the influence, as opposed to what a reasonable person would have believed under similar circumstances.[3]

---

**3.** There are many circumstances which might cause a person to pull to the side of a lightly traveled road in the middle of the night. Perhaps they dropped an item that they wished to safely recover or were having mechanical or physical problems that made it unsafe to continue operating the motor vehicle. Or perhaps the person was drunk, consuming drugs or preparing to dispose of incriminating evidence. Those persons in the former category would not reasonably believe that they were put into a coercive situation when an officer stops to potentially render aid and activates his lights and would be grateful that the officer is doing his job. Those in the latter category, however, will believe that they are under police authority because of their guilty conscience. Fortunately, the standard to determine whether a seizure has occurred is the reasonable person standard, and not the reasonable criminal standard.

¶ 8 In the present case, the only factor that would indicate a seizure was the activation of the overhead lights. In my opinion, this is a limited display of police presence and not so intrusive so to elevate the encounter to an investigative detention. This solitary factor was not accompanied by any other factors that would amount to a show of authority such as a command accompanied by the overhead lights, a drawn weapon, or a multitude of police officers. Accordingly, I respectfully disagree with the Majority's analysis and conclusion in this case, and, therefore, dissent.