J-A18005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DANIEL MALDONADO, | |
| Appellee | No. 1781 MDA 2015 |

Appeal from the Order Entered September 15, 2015
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0000777-2015

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED OCTOBER 07, 2016**

The Commonwealth appeals from the order suppressing evidence seized from Appellee, Daniel Maldonado.  The Commonwealth contends that the suppression court erred by impermissibly relying on the subjective intent of the arresting officer in reaching its conclusion that Appellee was subjected to a temporary investigative detention, and that the detention was not supported by reasonable suspicion.  After careful review, we affirm.

The suppression court summarized the pertinent facts from the suppression hearing as follows:

> Detectives Ryan Mong and Lawrence Minnick (herein Det. Mong and Det. Minnick) of the Lebanon County Drug Task Force were conducting surveillance in the area of North 9th and Crowell Streets in Lebanon City, Lebanon County,

---

[*] Former Justice specially assigned to the Superior Court.

Pennsylvania[,] on the morning of January 29, 2015. Det. Minnick testified that this area is a high crime area, specifically for crimes involving drugs and violence. At approximately 11:30 a.m., the Detectives noticed an Hispanic male approach a black Nissan sedan that was parked in a parking lot off of Crowell Street. The Hispanic male was later identified to be Daniel Maldonado (herein [Appellee]). Detectives allege that they observed [Appellee] enter the vehicle, remain in the vehicle for approximately thirty (30) seconds, and then exit the vehicle. Detectives aver that the vehicle drove away after [Appellee] exited. Detectives further allege that after exiting the vehicle, [Appellee] was observed to be walking back and forth between Crowell and Mifflin Streets. Detectives testified that the above described behavior was suspicious.

The Detectives approached [Appellee] and asked to speak with him and he agreed. At this time, both Detectives were in plain clothes, with their weapons concealed. Det. Minnick testified that they had their badges visible and identified themselves to [Appellee] upon initiating the interaction. Detectives told [Appellee] what they had observed and why they had approached him. Det. Minnick testified that the tone of the interaction was conversational. [Appellee] produced his identification when it was requested. Det. Mong wrote down the information and returned the identification to [Appellee]. Det. Mong ran the information for warrant[s], which came back negative. Detectives testified that it is their practice to return identification to an individual as soon as possible so that the person feels free to leave. When asked what he was doing in the area, [Appellee] told Det. Minnick that he was getting fresh air and that he enjoyed the cold. At the [p]re-[t]rial [h]earing, [Appellee] testified that he was in the area to get lunch.

Detectives asked [Appellee] if he had any weapons, drugs, or contraband on his person. [Appellee] responded in the negative. Detectives testified that they asked [Appellee] if he would consent to a search of his person and that he voluntarily consented. [Appellee] avers that he was asked to consent to a search, but that he declined and the Detectives conducted the search anyway. After being patted down, Detectives found a cigarette pack. Inside the cigarette pack was a cigarette that did not look like the others in the pack. When asked, [Appellee] admitted that it was marijuana.

Detectives testified that the entire interaction was approximately five to ten (5-10) minutes long. At the end of the interaction, [Appellee] was permitted to leave and was told that he would be charged as a result of the marijuana found on him.

Suppression Court Opinion (SCO), 9/15/15, at 2-4.

Appellee was charged with possession of paraphernalia, 35 P.S. § 780-113(a)(32),[1] and possession of a small amount of marijuana, 35 P.S. § 780-113(a)(31)(i). He filed a suppression motion on July 2, 2015, challenging 1) the legality of the stop, premised on the allegation that the detectives lacked reasonable suspicion to conduct an investigative detention, as well as 2) the legality of the subsequent search as the fruit of that illegal stop, and due to his factual assertion that consent to search was not given. The suppression court held a hearing on that motion on July 25, 2015, at which Det. Mong, Det. Minnick, and Appellee testified. After further briefing by both parties, the suppression court issued an opinion and order granting Appellee's suppression motion on September 15, 2015.

The Commonwealth filed a timely notice of appeal on October 14, 2015. The Commonwealth also filed a timely, court-ordered Pa.R.A.P. 1925(b) statement on October 29, 2015. On November 3, 2015, the suppression court issued an order in lieu of a Rule 1925(a) opinion, indicating that it was relying on its September 15, 2015 opinion.

_____

[1] The Commonwealth separately charged Appellee for the cigar wrapper that contained the small amount of marijuana. Thus, both charges stemmed from Appellee's possession of a single marijuana 'joint' or 'blunt.'

The Commonwealth now presents the following question for our review: "Whether the [suppression] court erred in finding that [Appellee] was the subject of an unlawful detention?" Commonwealth's Brief at 4 (unnecessary capitalization omitted).

> When reviewing an [o]rder granting a motion to suppress we are required to determine whether the record supports the suppression court's factual findings and whether the legal conclusions drawn by the suppression court from those findings are accurate. In conducting our review, we may only examine the evidence introduced by appellee along with any evidence introduced by the Commonwealth which remains uncontradicted. Our scope of review over the suppression court's factual findings is limited in that if these findings are supported by the record we are bound by them. Our scope of review over the suppression court's legal conclusions, however, is plenary.

*Commonwealth v. Gutierrez*, 36 A.3d 1104, 1107 (Pa. Super. 2012) (quoting *Commonwealth v. Henry*, 943 A.2d 967, 969 (Pa. Super. 2008)).

As a threshold matter, we must address waiver. The Commonwealth's statement of the question and the Commonwealth's Rule 1925(b) statement both appear to raise a single issue/claim for our review. *See* Commonwealth's Brief at 4; Commonwealth's Rule 1925(b) Statement, at 1 (single page) ("The [suppression] court erred in granting [Appellee]'s [m]otion to [s]uppress after finding that [Appellee] was the subject of an unlawful investigative detention."). The argument section of the Commonwealth's brief, however, raises two, and perhaps three distinct claims. The Commonwealth's argument section contains two subsections, the first addressing the claim that the court erred in determining that

- 4 -

Appellee was subjected to an investigative detention.  We conclude that this claim has clearly been preserved for our review.

The second subsection presents a wholly separate argument, contending that Appellee voluntarily consented to the subsequent search. That issue is not only entirely separate from the nature and legality of preceding stop, but it was also not raised in the Commonwealth's Rule 1925(b) statement, *see Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived."), and it was not separately set forth in the Commonwealth's statement of questions involved.  *See* Rule 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); *Thomas v. Elash*, 781 A.2d 170, 176–77 (Pa. Super. 2001) ("Pennsylvania Rule of Appellate Procedure 2116(a) mandates that an appellant must present all issues on appeal in the [s]tatement of [q]uestions [i]nvolved section of his brief.  This rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily, no point will be considered which is not set forth in the statement of questions involved or suggested thereby.") (quotation marks omitted); *but see* Rule 2116(a) ("The statement will be deemed to include every subsidiary question fairly comprised therein.").  Appellee's consent (or lack thereof) to the search is not a *subsidiary* issue to the separate question of whether Appellee was subjected to an investigative detention.  A stop is not a search, and a search is not a stop.  Thus, we deem the Commonwealth's consent-

related arguments to be waived under **Lord**, for its failure to raise the consent issue in its Rule 1925(b) statement, and also waived under Rule 2116(a), for the Commonwealth's failure to separately raise that issue in its statement of the questions involved.[2]

Because the Commonwealth waived its consent-related claim, it is not entitled to any form of relief on its preserved claim. The nature of the

---

[2] We find waiver particularly appropriate in this circumstance, because the suppression court's opinion only briefly touches upon the question of consent, **see** SCO at 11-12. Notably, the suppression court's opinion lacks any specific credibility determinations regarding 1) Appellee's claim that he did not consent; and 2) the detectives' claim that he did. Instead, the suppression court appears to have only addressed whether it should even reach the matter of consent, given the fact that it had already determined that Appellee was illegally detained without reasonable suspicion. The court did conclude that "even if [Appellee] did give consent to the search of his person, such consent was involuntary *under the circumstances*." **Id.** at 12 (emphasis added). However, as phrased and in the context of the preceding analysis appearing in the opinion, the referenced 'circumstances' were not credibility determinations, but the fact that the court had concluded that Appellee was illegally detained.

Had the Commonwealth raised the matter of consent separately in its Rule 1925(b) statement, particularly since it was already aware of the suppression court's opinion (as it had accompanied the order granting suppression), the suppression court could have rendered a more specific analysis regarding the matter of consent in a Rule 1925(a) opinion instead of merely relying on the already-issued opinion. **See Commonwealth v. Castillo**, 888 A.2d 775, 779 (Pa. 2005) (holding that "the **Lord**[] rule remains necessary to insure trial judges in each appealed case the opportunity to opine upon the issues which the appellant intends to raise, and thus provide appellate courts with records amendable to meaningful appellate review").

Commonwealth's preserved claim is that the suppression court erred by concluding that Appellee was subjected to an investigative detention by the detectives. However, if, as the Commonwealth argues, Appellee was only subjected to a 'mere encounter' - there must still be a legal justification for the subsequent search that yielded Appellee's marijuana cigarette. At no point does the Commonwealth argue, or even suggest, that the search which yielded the contraband was based upon probable cause to search for such contraband.[3] Instead, it is patently clear from the record that the search was justified *only* by Appellee's alleged consent. Thus, the legal conclusion that Appellee was subjected to investigative detention rather than a mere encounter, even if erroneous, cannot alone justify the reversal of the order granting suppression. Even if Appellee was lawfully detained (or not detained), there was no showing of probable cause to conduct the subsequent search that yielded the suppressed contraband.

Accordingly, we conclude that the Commonwealth has failed to meet its burden on appeal to show that the trial court's order granting suppression

---

[3] There is also no evidence of record, nor any argument made by the Commonwealth, suggesting that the detectives had a reasonable suspicion to search Appellee for a weapon. "[A] protective search cannot be justified … unless the officer can articulate facts that establish an individualized, objective basis for perceiving a threat of armed violence." **Commonwealth v. Grahame**, 7 A.3d 810, 816 (Pa. 2010). Nevertheless, even if the detectives possessed reasonable suspicion to conduct a pat-down search of Appellee for weapons, they did not, in fact, conduct such a pat-down. Instead, they searched the interior of Appellee's cigarette pack, a location highly unlikely to contain a weapon in any event.

was erroneous. We note that, "as an appellate court, we may affirm on any legal basis supported by the certified record." *Commonwealth v. Williams*, 125 A.3d 425, 433 (Pa. Super. 2015). Furthermore, "[a] warrantless search or seizure is presumptively unreasonable under the Fourth Amendment and Article I, § 8, subject to a few specifically established, well-delineated exceptions." *Commonwealth v. McCree*, 924 A.2d 621, 627 (Pa. 2007). Even if we were to agree with the Commonwealth that the suppression court erred in determining that Appellee was subjected to an investigative detention, the Commonwealth fails to present any preserved claim that their presumptively unreasonable search satisfied an exception to the warrant requirement.

In any event, we would agree with the suppression court that Appellee was subjected to an investigative detention requiring reasonable suspicion, that such suspicion was lacking, and that any consent given thereafter was vitiated by the taint of that illegal detention.

> The legal standard of proof required by a police officer when engaging or interacting with a citizen varies depending on whether the citizen has been detained, and if so, the degree of the detention and the circumstances surrounding the interaction. *See Commonwealth v. Sands*, 887 A.2d 261, 268–69 (Pa. Super. 2005) (quoting *Commonwealth v. Hill*, 874 A.2d 1214, 1217 (Pa. Super. 2005)). There are three basic levels of interaction between citizens and police officers, and the accompanying standard of proof needed for each level is firmly established:
>
> > The first category, a mere encounter or request for information, does not need to be supported by any level of suspicion, and does not carry any official compulsion to stop or respond. The second category, an investigative

detention, derives from ***Terry*** and its progeny: such a detention is lawful if supported by reasonable suspicion because, although it subjects a suspect to a stop and a period of detention, it does not involve such coercive conditions as to constitute the functional equivalent of an arrest. The final category, the arrest or custodial detention, must be supported by probable cause.

***Id.*** (quoting ***Hill***, 874 A.2d at 1217); ***see also Terry v. Ohio***, 392 U.S. 1, 23–26 … (1968). "'No constitutional provision prohibits police officers from approaching a citizen in public to make inquiries of them.' However, 'if the police action becomes too intrusive, a mere encounter may escalate into an investigatory [detention] or seizure.'" ***Commonwealth v. Beasley***, 761 A.2d 621, 624 (Pa. Super. 2000) (quoting ***Commonwealth v. Boswell***, … 721 A.2d 336, 339–40 ([Pa.] 1998) (plurality)). "The term 'mere encounter' refers to certain non-coercive interactions with the police that do not rise to the level of a seizure of the person under the fourth amendment." ***Commonwealth v. Peters***, … 642 A.2d 1126, 1129 ([Pa. Super.] 1994) (quoting ***Commonwealth v. Bennett***, … 604 A.2d 276, 280 ([Pa. Super.] 1992)). For example, a mere encounter transpires when an officer approaches a citizen on a public street for the purpose of making inquiries. ***Id.*** (quoting ***Bennett***, 604 A.2d at 280).

In contrast, "[a]n investigative detention occurs when a police officer temporarily detains an individual by means of physical force or a show of authority for investigative purposes." ***Commonwealth v. Smith***, 904 A.2d 30, 35 (Pa. Super. 2006) (quoting ***Commonwealth v. Barber***, 889 A.2d 587, 592 (Pa. Super. 2005)). In other words, in view of all the circumstances, if a reasonable person would have believed that he was not free to leave, then the interaction constitutes an investigatory detention. ***See Peters***, 642 A.2d at 1129 (quoting ***Commonwealth v. Harper***, … 611 A.2d 1211, 1215 ([Pa. Super.] 1992)); ***Hill***, 874 A.2d at 1218–19 (quoting ***Commonwealth v. Johonoson***, 844 A.2d 556, 562 (Pa. Super. 2004)). An investigatory detention triggers the constitutional protection of the Fourth Amendment to the United States Constitution, Article I, Section 8 of the Pennsylvania Constitution, and the prerequisites for such a detention as set forth in ***Terry***, ***supra***. ***Smith***, 904 A.2d at 35 (quoting ***Barber***, 889 A.2d at 592).

*Commonwealth v. Cauley*, 10 A.3d 321, 325–26 (Pa. Super. 2010) (footnote omitted).

The Commonwealth argues that the suppression court erred because it improperly considered the "subjective intent of the investigating officer[s]." Commonwealth's Brief, at 19. However, the subjective intent of the detectives at issue – that they intended to investigate Appellee for a suspected drug deal – was, in fact, verbally conveyed to Appellee during the course of the stop. *See* SCO at 9 ("Detective Minnick testified that he told [Appellee] why they asked to speak with him."). It was not, therefore, truly subjective within the meaning of that term as used in the case law. As the Supreme Court of the United States has opined when discussing the import of the subjective intent of an officer regarding whether, under the totality of the circumstances, an individual is 'in custody' for purposes of *Miranda v. Arizona*, 384 U.S. 436 (1966):

> It is well settled, then, that a police officer's subjective view that the individual under questioning is a suspect, if undisclosed, does not bear upon the question whether the  individual is in custody for purposes of *Miranda*. The same principle obtains if an officer's undisclosed assessment is that the person being questioned is not a suspect. In either instance, one cannot expect the person under interrogation to probe the officer's innermost thoughts. *Save as they are communicated or otherwise manifested to the person being questioned*, an officer's evolving but unarticulated suspicions do not affect the objective circumstances of an interrogation or interview, and thus cannot affect the *Miranda* custody inquiry.
>
> …

> ***An officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned.***

***Stansbury v. California***, 511 U.S. 318, 324–25 (1994) (internal citation omitted, emphasis added).

Similarly, here, while the objective test for whether Appellee was subjected to an investigative detention is not informed by the subjective beliefs of the detectives, those beliefs were known to Appellee at the time of the stop, which rationally informed whether a reasonable person in Appellee's situation would feel free to leave. Coupled with the duration of the stop (5-10 minutes), and the detectives' numerical advantage (2-1), their request for Appellee's ID, and the request to search his person, the suppression court acted within its discretion in weighing the totality of the circumstances so as to conclude that Appellee was subjected to an investigative detention, and not a mere encounter.[4] As the term 'investigative detention' implies, the detectives temporarily detained Appellee in order to further investigate whether he was involved in a drug deal. Thus, even if waiver did not apply and we were to reach the Commonwealth's primary argument, we would conclude that it lacks merit.

Regarding whether the detectives possessed reasonable suspicion to conduct this stop, the suppression court stated as follows:

_____

[4] Due to other factors (no physical restraints applied, no forced movement, no weapons drawn), we also agree with the conclusion that Appellee was not subjected to the functional equivalent of a formal arrest.

A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. This standard, less stringent than probable cause, is commonly known as reasonable suspicion. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Kemp*, 961 A.2d 1247, 1255 (Pa.Super. 2008).

An individual's mere presence in a "high crime area" alone is also insufficient to support the existence of reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119 (2000); *Brown v. Texas*, 443 U.S. 47 (1979); *Commonwealth v. Kearney*, 411 Pa.Super. 274 (1992); *In re D.M.*, 566 Pa. 445 (2001); *Commonwealth v. Key*, 789 A.2d 282 (Pa.Super. 2001). "The officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Wardlow*, 528 U.S. at 123-24 (citing *Terry* …) (holding that an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot)). "The Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Wardlow*, 528 U.S. at 123 (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). "The determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Wardlow*, 528 U.S. at 125 (citing *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

"Any curtailment of a person's liberty by the police must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity." *Commonwealth v. Lewis*, 535 Pa. 501, 508 (1994) (quoting *Reid v. Georgia*, 448 U.S. 438, 440 (1980)). "A court must examine all surrounding circumstances evidencing a show of

authority or exercise of force, including the demeanor of the police officer, the manner of expression used by the officer in addressing the citizen, and the content of the interrogatories and statements." **Commonwealth v. Mendenhall**, 552 Pa. at 488 (citations omitted).

In the case before this Court, [the d]etectives observed [Appellee] get into a car for thirty (30) seconds in a high crime area, on a well-traveled street. The [d]etectives testified that their experience on the Drug Task Force had led them to believe that [Appellee]'s behavior was consistent with a drug deal. [The d]etectives were not able to observe what occurred in the vehicle, but the short duration of [Appellee]'s stay within the vehicle led [the d]etectives to believe that a drug deal had taken place. …

An investigative detention requires law enforcement to have reasonable suspicion that criminal activity is afoot and that the individual detained is involved with that criminal activity. Reasonable suspicion is more than an unparticularized suspicion or hunch and requires that law enforcement be able to articulate particular reasons for their suspicion. [The d]etectives testified that they stopped [Appellee] because he was in a high crime area, he was in a vehicle for a short time, and he was walking on the street in the cold. [Appellee] claimed at the Hearing that he was in the area to get something to eat. While the Court does not believe the explanation [Appellee] gave at the Hearing, there are restaurants and other businesses in that area. An individual's mere presence in an area of high crime is insufficient to raise reasonable suspicion without more. The Commonwealth cannot rely on the experience of the [d]etectives alone, or in combination with the high crime area, to suggest that this raised a reasonable suspicion for the [d]etectives. The [d]etectives must be able to articulate why [Appellee]'s behavior gave them reasonable suspicion. They failed to articulate particular reasons for their encounter with [Appellee] aside from their experience and the area. This Court finds that it was an illegal investigative detention because the [the d]etectives lacked reasonable suspicion to conduct the detention of [Appellee].

SCO, at 8-10.

We would agree. Appellee was observed, in broad daylight, getting into a car and then exiting that vehicle shortly thereafter, in a busy, well-

- 13 -

travelled area. Police did not observe *anything* that occurred in that vehicle. The fact that this occurred in a high crime area does not render otherwise innocuous facts into evidence of criminal activity. There are a hundred innocent reasons why Appellee could have briefly entered and exited the vehicle, none of which were dispelled by the detectives' experience, their observation of Appellee pacing back and forth afterwards, or any other circumstances present in this case. The detectives' assumption that criminal activity occurred in the vehicle was no more than a hunch. **See Commonwealth v. Donaldson**, 786 A.2d 279, 281 (Pa. Super. 2001) ("While the term 'reasonable suspicion' is undoubtedly open to some degree of interpretation, it would seem clear that it was meant to convey a level of suspicion that goes beyond an 'educated hunch.'"); **id.** at 282 ("While certain activity may seem generally suspicious or 'fishy,' it does not necessarily equate to 'reasonable suspicion' for purposes of search and seizure law."). The suppression court did not, therefore, err in concluding that the officers lacked reasonable suspicion to conduct an investigatory detention.

Finally, because we would conclude that Appellee was illegally detained, any subsequent consent given was tainted by that illegal stop.

> When a consensual search is preceded by an illegal detention, "the government must prove not only the voluntariness of the consent under the totality of the circumstances, but ... must also establish a break in the causal connection between the illegality and the evidence thereby obtained." **United States v. Melendez-Garcia**, 28 F.3d 1046, 1053 (10th Cir. 1994). **See also United States v. Jerez**, 108 F.3d 684 (7th Cir. 1997). In

- 14 -

determining whether the consent has been vitiated by the taint of the preceding illegal detention, the reviewing court must consider: "'(1) the temporal proximity of the illegal detention [and the defendants' consent]; (2) the presence of intervening factors between the two events; and (3) the circumstances surrounding, and the nature of, the official misconduct.' *United States v. Sanchez-Jaramillo*, 637 F.2d 1094, 1099 (7th Cir.) (citing *Brown v. Illinois*, [422 U.S. 590, 603-04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)]), *cert. denied*, 449 U.S. 862, 101 S.Ct. 166, 66 L.Ed.2d 79 (1980)." *Jerez*, 108 F.3d at 695. *See also United States v. Chavez-Villarreal*, 3 F.3d 124, 127-28 (5th Cir. 1993); *United States v. Campbell*, 920 F.2d 793, 797 (11th Cir. 1991); *United States v. Delgadillo-Velasquez*, 856 F.2d 1292 (9th Cir. 1988).

*Commonwealth v. Sierra*, 723 A.2d 644, 647–48 (Pa. 1999).

Here, the Commonwealth argues that "[t]here is absolutely no evidence to show that [Appellee]'s consent was the product of anything other than his own free will." Commonwealth's Brief, at 26. The Commonwealth, however, misunderstands the applicable standard. Once it is established that the preceding stop was illegal, it is the Commonwealth's burden to demonstrate the voluntariness of Appellee's consent, not Appellee's burden to demonstrate that his consent was involuntary. *Sierra*, *supra*.

Moreover, the Commonwealth offers no evidence or argument regarding the temporal relationship between the stop and the consent, nor any evidence or argument regarding the presence of intervening factors. *See id.* Instead, the Commonwealth seeks to rely entirely on the Appellee's prior experience in the criminal justice system and the fact that he is a "fully functional adult," whatever that means. We find this argument

- 15 -

to be woefully inadequate to establish "a break in the causal connection between the illegality and the evidence thereby obtained." *Id.* Accordingly, we would conclude that the Commonwealth failed to prove that the suppression court erred in determining that any consent given by Appellee was tainted by the illegal stop.

In summary, we conclude that the Commonwealth is not entitled to relief because it waived any claims regarding whether Appellee consented to the search which yielded the seized contraband, and we would affirm the suppression order on that basis. Nevertheless, even if we were to reach the Commonwealth's arguments, we would conclude that the suppression court did not err in finding that Appellee was illegally detained without reasonable suspicion, and that, even if he gave his consent to search his body, that consent was vitiated by the taint of the immediately preceding illegal stop.

Suppression order *affirmed*.

President Judge Emeritus Ford Elliott joins this memorandum.

President Judge Emeritus Stevens concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/7/2016

- 16 -