J-S03022-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JAMES P. ENGLISH | : | |
| | : | |
| Appellant | : | No. 862 WDA 2019 |

Appeal from the Judgment of Sentence Entered May 20, 2019
In the Court of Common Pleas of Crawford County Criminal Division at
No(s): CP-20-CR-0000116-2018

BEFORE: McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:               **FILED FEBRUARY 11, 2020**

James P. English (Appellant), appeals from the judgment of sentence entered in the Crawford County Court of Common Pleas, following his bench-trial convictions of driving under the influence[1] (DUI) and related offenses. Appellant argues the court erred in finding his initial encounter with Pennsylvania State Police Troopers was a mere encounter and thus the court erred in denying his motion to suppress. We affirm.

The trial court summarized the facts as follows: On December 23, 2017, at approximately 12:23 a.m., Pennsylvania State Police Trooper Cody J. Northcott and Trooper Nicholas Miller were on duty, in uniform, when they received a call from a witness who reported an accident at the intersection of Lake Road and Leach Road in North Shenango Township. The witness stated

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(a)(1).

the vehicle had left the scene by traveling south on Lake Road and had front end damage. The witness was unable to provide further description of the vehicle. Trial Ct. Op. 8/30/18 at 1.

At the time the information was received the troopers were physically located south of the accident scene and elected to canvas the area of the Welcome Inn, a bar located approximately 1.9 miles from the accident scene. In the parking lot, the troopers observed a Ford Edge with a broken headlight and "yellow paint that appeared to be shiny." Trial Ct. Op. at 2. The troopers ran the license plate number and learned Appellant was the owner. The troopers entered the bar and asked if Appellant was present. Appellant, who was sitting at the bar with a small, full glass in front of him, responded in the affirmative. The troopers asked if Appellant would step outside because they did not want to question him inside the bar with other patrons present. Once outside, Trooper Northcott asked Appellant if he knew why they wanted to talk to him. Appellant responded he knew it concerned the automobile accident in which he was just involved. Upon further questioning, Appellant stated he was traveling at a high rate of speed and was unable to stop at a stop sign, which led him to strike a gate where the accident occurred. Trooper Northcott testified at the suppression hearing that Appellant never asked if he could leave, nor was he told he could leave. *Id.* at 3. The troopers' vehicle contained mobile video recording (MVR) with both video and audio and the troopers advised Appellant he was being recorded.

While talking to Appellant, Trooper Northcott noticed a strong odor of alcohol on his breath as well as glassy, bloodshot eyes and slowed speech. Trooper Northcott asked Appellant if he had anything to drink before coming to the Welcome Inn. Appellant replied he did not, and that he had been in the bar about ten minutes. Trooper Northcott nevertheless suspected Appellant had been driving under the influence and asked him to undergo field sobriety tests. Appellant acquiesced and ultimately failed the tests. Trooper Northcott then handcuffed Appellant.

Trooper Northcott asked Appellant for his insurance information. Appellant directed Trooper Northcott to retrieve it from the vehicle. While inside the vehicle, Trooper Northcott detected an odor of marijuana and questioned Appellant, *id.* at 4, who responded that he smoked marijuana earlier in the day. **See** Appellant's Brief at 9. At no time did either trooper advise Appellant of **Miranda**[2] warnings. Appellant was then transported to the hospital, where he consented to a blood draw. The blood draw indicated a blood alcohol concentration (BAC) of 0.135% as well as the presence of cocaine and marijuana.

The Commonwealth charged Appellant with seven counts of DUI under these subsections: general impairment; high rate of alcohol; Schedule I controlled substance; Schedule II controlled substance; metabolite of a controlled substance; impaired ability; and combination of alcohol and/or

_____

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

drugs.[3] The Commonwealth further charged Appellant with summary offenses under failing to stop signs and yield signs, failing to drive vehicle at safe speed, careless driving, and accidents involving damage to unattended vehicle or property[4].

On March 29, 2018, Appellant filed a motion to suppress his statements and the blood alcohol test, alleging the troopers did not have reasonable suspicion or probable cause to stop and question him. The trial court held a suppression hearing on August 2, 2018 and denied in part and granted in part Appellant's motion. The trial court determined, in viewing the totality of the circumstances, that the encounter between Appellant and the troopers began as a mere encounter, evolved into an investigative detention and ended as a custodial interrogation. Trial Ct. Op. at 7. The court thus declined to suppress Appellant's initial statements to the troopers. However, it suppressed the interrogation and statements given after Appellant failed the field sobriety tests and was handcuffed. Order, 8/30/18.

This matter proceeded to a bench trial upon stipulated evidence.[5] On

---

[3] 75 Pa.C.S. § 3802(a)(1), (b), (d)(1)(i)-(iii), (d)(2)-(3).

[4] 75 Pa.C.S. §§ 3323(b), 3361, 3714(a), 3745(a).

[5] At trial, the parties stipulated to additional facts surrounding the incident on December 23, 2017, including the results of the field sobriety tests and the results of Appellant's blood draw, which revealed a BAC of 0.135% and the presence of cocaine and marijuana. Furthermore:

At some time after [Appellant's] arrest, Trooper Northcott went to the intersection of Leach Road and S. Lake Road[.]

April 3, 2019, the trial court found Appellant guilty on all counts. On May 20, 2019, the court sentenced Appellant to 60 months' intermediate punishment, with the first 60 days to be served in incarceration, followed by three months' house arrest. Appellant did not file a post-trial motion. This timely appeal followed. Appellant complied with the trial court's order to file Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Appellant presents one issue for our review:

Whether the trial court erred in denying Appellant's motion to suppress pursuant to Pennsylvania Rule of Criminal Procedure Rule 581?

Appellant's Brief at 4. Appellant contends the trial court erred in denying his motion to suppress because the interaction with Troopers Northcott and Miller at the Welcome Inn was not a mere encounter. Appellant believes the initial encounter started as a custodial interrogation or, at least, an investigative detention. Appellant further argues that Trooper Northcott's suspicion that Appellant was driving under the influence, without investigation of the accident scene, was insufficient to establish reasonable suspicion or probable cause that Appellant's vehicle was involved in an accident. *Id.* at 14. Appellant contends that under the totality of the circumstances, the troopers restrained his freedom and effectively seized him in violation of his

---

Trooper Northcott would testify that he observed damage to a gate west of Leach Road and S. Lake Road intersection and tire marks on the road approximately thirty feet in length.

Commonwealth's Exh. 2 & 3.

constitutional rights, *id.* at 15, when the two troopers approached him in full

uniform with firearms holstered at their sides and asked him to speak with

them outside. Thus, Appellant believed he had no choice and was not free to

leave.[6]

We adhere to the following standard:

> Our standard of review in addressing a challenge to the denial
> of a suppression motion is limited to determining whether the
> suppression court's factual findings are supported by the record
> and whether the legal conclusions drawn from those facts are
> correct. Because the Commonwealth prevailed before the

---

[6] In a footnote in Appellant's brief, he notes that at the time of the suppression hearing, this Court had not yet issued our decision in *Commonwealth v. Krenzel*, 209 A.3d 1024 (Pa. Super. 2019) (holding appellant did not make knowing and conscious choice to submit to blood draw because officer failed to, as statutorily obligated, advise of his right to refuse chemical testing and the consequences arising therefrom), *rearg. denied* (July 12, 2019). Appellant's Brief at 9 n.6. Appellant then contends he did not knowingly and consciously agree to submit to the blood draw because the troopers never informed him of his rights. Appellant concedes this issue was not raised in his motion to suppress. *See* Pa.R.A.P. 903(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Jones*, 193 A.3d 957, 964 (Pa. Super. 2018) (defendant cannot raise, on appeal, claim that he was entitled to suppression on a theory he did not raise before trial court).

While we acknowledge *Krenzel* was decided on the same day Appellant was sentenced (May 20, 2019), we note he did not seek relief before the trial court in a post-sentence motion, include this issue in his court-ordered Pa.R.A.P. 1925(b) statement, or present any meaningful legal argument for this Court's review in his appellate brief. Accordingly, we do not consider any claim under *Krenzel*. *See* Pa.R.A.P. 1925(b)(vii) (issues not included in Rule 1925(b) Statement are waived), 2119(a) (argument section of brief shall include discussion and citation of authorities as are deemed pertinent); *Commonwealth v. Rush*, 959 A.2d 945, 949-51 (Pa. Super. 2008) (this Court cannot review legal theory in support of claim unless that particular legal theory was presented to trial court; furthermore, failure to present developed arguments and apply relevant law to facts of the case may result in waiver of claim).

suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the [trial court's] conclusions of law [ ] are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Shreffler*, 201 A.3d 757, 763 (Pa. Super. 2018) (citation omitted).

The main purpose of both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution is to protect "citizens from unreasonable searches and seizures." *Commonwealth v. Hill*, 874 A.2d 1214, 1217 (Pa. Super. 2005) (citation omitted). "Not every encounter between citizens and the police is so intrusive as to amount to a 'seizure' triggering constitutional concerns." *Id.*

Traditionally, this Court has recognized three categories of encounters between citizens and the police. These categories include (1) a mere encounter, (2) an investigative detention, and (3) custodial detentions. The first of these, a "mere encounter" (or request for information), [needs] not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Collins***, 950 A.2d 1041, 1046 (Pa. Super. 2008) (citation

omitted).  "***Miranda*** warnings are required only when a suspect is in custody."

***Commonwealth***. ***v. Pakacki***, 901 A.2d 983, 987 (Pa. 2006).

> In evaluating the level of interaction, courts conduct an objective examination of the totality of the surrounding circumstances.  We are bound by the suppression court's factual findings, if supported by the record; however, the question presented—whether a seizure occurred—is a pure question of law subject to plenary review.
>
> The totality-of-the-circumstances test is ultimately centered on whether the suspect has in some way been restrained by physical force or show of coercive authority.  Under this test, no single factor controls the ultimate conclusion as to whether a seizure occurred—to guide the inquiry, the United States Supreme Court and [the Pennsylvania Supreme Court] have employed an objective test entailing a determination of whether a reasonable person would have felt free to leave or otherwise terminate the encounter.  "[W]hat constitutes a restraint on liberty prompting a person to conclude that he is not free to 'leave' will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs."

***Commonwealth v. Lyles***, 97 A.3d 298, 302-03 (Pa. 2014) (citations

omitted).

> Here, the trial court opined:
>
> [W]e cannot find that the initial encounter was really much different than a police officer asking someone at the scene of an accident if that person was the driver.  Certainly the Trooper asked [Appellant] to go outside and the Troopers were in uniform but they essentially indicated they asked him to go outside as to not question him in front of other patrons in the bar suggesting they did not want to embarrass him.
>
> [Appellant] went out freely with the Troopers and the initial question that he was asked was if he knew why the Troopers were there to talk to him.

He responded that he did know it was about the crash that he had just been in.

Up to that point we are satisfied that the interaction was a mere encounter.

However, based on Trooper Northcott's testimony on cross examination the encounter evolved into at least an investigative detention because the Trooper indicated that once [Appellant] stated he was the driver of the vehicle that had been involved in the crash [Appellant] was no longer free to leave and we believe that would have been apparent to him.

Trial Ct. Op. at 5-6.

Further, the trial court explained:

While we recognize any interaction with the Troopers did not occur at the site of the accident, what did occur was essentially equivalent to what would have happened at the scene of the accident if [Appellant] was encountered by the police at that time. The interaction was for a limited period of time and while there was some repetitive questioning by the Trooper we believe that the encounter was an investigative detention.

Based on that investigative detention and the fact [Appellant] had been in an accident where he ran through a stop sign and further that he had the odor of alcohol on his person as well as glassy eyes with slow speech as indicated by the Trooper, there was reason to administer field sobriety tests.

Once those were administered and [Appellant] was placed under arrest he clearly was in custodial detention and any questioning at that point would have required that he be given *Miranda* warnings.

*Id.* at 7.

Lastly, the court noted:

[Appellant's] counsel spent quite a bit of time [at the suppression hearing] trying to establish that the Trooper should not have concluded that the vehicle in the parking lot of the Welcome Inn which turned out to be [Appellant's] was the vehicle in the

- 9 -

accident the Trooper was investigating because of paint color not matching.

We do not think that is of any consequence since the Trooper was aware that the vehicle he was looking for would have fresh front end damage which is exactly what [Appellant]'s vehicle had when found in the Welcome Inn parking lot, even though there can be a dispute as to color of the paint transferred from the contact with the gate at the accident scene.

*Id.* at 7.

We agree with the trial court's evaluation that the initial encounter between the troopers and Appellant was a mere encounter requiring no level of suspicion. The initial approach and request carried no official compulsion to stop, respond, or comply. *See Collins*, 950 A.2d at 1046. The troopers did not coerce or physically restrain Appellant. *See Lyles*, 97 A.3d at 303.

Moreover, even if the initial confrontation was an investigative detention as opposed to a mere encounter, as Appellant maintains, the troopers' conduct comports with constitutional limitations. *See Pakacki*, 901 A.2d at 987. The encounter encompassed a brief, investigative detention supported by reasonable suspicion, based upon the witness information received and the troopers' observations of Appellant's vehicle with front end damage, in close proximity, both temporal and geographic, to the situs of the accident. Accordingly, the trial court properly granted in part and denied in part Appellant's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/11/2020</u>